# Exhibit D:

# Charter Party

(continued) _____ _____ "BALTIME 1939" UNIFORM TIME-CHARTER _____ _____ PART I

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
| --- | --- |
| | |

WORKING COPY

WORKING COPY

**WORKING COPY**

Left margin (vertical text): *Adopted by the Documentary Committee of the Chamber of Shipping of the United Kingdom and the Documentary Committee of The Japan Shipping Exchange, Inc.*

Left margin (vertical text): *Issued 6/2/1909 Amended 6/2/1911 Amended 1/3/1920 Amended 1/3/1939 Amended 1/8/1920 Amended 1/7/1974*

Left margin (vertical text): *Printed by BIMCO's idea*

Left margin (vertical text): *Copyright, published by The Baltic and International Maritime Conference, Copenhagen*

THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE

UNIFORM TIME-CHARTER (Box Layout 1974)

CODE NAME: "BALTIME 1939"

Part I

| | |
|---|---|
| 1. Shipbroker<br>Ocean Reefer Services Limited<br>Hornchurch<br>Essex<br>UK | 2. Place and date<br>Hornchurch, 1st April 2005 |
| 3. Owners/Place of business<br>Bossa Shipping Limited<br>George Town<br>Cayman Islands | 4. Charterers/Place of business<br>Great White Fleet Limited<br>Hamilton<br>Bermuda |
| 5. Vessel's name<br>m.v. Bossa | 6. GRT/NRT<br>See clause 62 |
| 7. Class<br>See clause 62 | 8. Indicated horse power |
| 9. Total tons d.w. (abt.) on Board of Trade's summer freeboard<br>See clause 62 | 10. Cubic feet grain/bale capacity<br>See clause 62 |
| 11. Permanent bunkers (abt.) | |
| 12. Speed capability in knots (abt.) on a consumption in tons (abt.) of<br>See clause 62 | |
| 13. Present position<br>Trading | |
| 14. Period of hire (Cl. 1)<br>One timecharter trip via good safe ports from ECCA with fresh green bananas to N. Cont and/or Baltic or Med incl. Black Sea in CHOPT always within IWL duration about 20/35 days WOG. | 15. Port of delivery (Cl. 1)<br>APS 1SP Almirante / Moin Range in CHOPT ATDNSHINC |
| | 16. Time of delivery (Cl. 1)<br>Not before 11th April 2005 |
| 17. (a) Trade limits (Cl. 2)<br>Worldwide always within I.W.L. (see also clause 55), trading to exclude Iraq, Cuba, Turkish Occupied Cyprus, war and war-like zones and U.N. and USA embargoed countries.<br><br>Trading to East Mediterranean is also excluded but trading to Egypt, Turkey, Lebanon, Greece and Syria is allowed.<br><br>(b) Cargo exclusions specially agreed | |
| 18. Bunkers on re-delivery (state min. and max. quantity) (Cl. 5)<br>See clause 42 | |
| 19. Charter hire (Cl. 6)<br>See clause 78 | 20. Hire payment (state currency, method and place of payment; also beneficiary and bank account) (Cl. 6)<br>Holyhouse Shipping AB, P.O. Box 1150, S-111 81 Stockholm, Sweden<br>Bank: NORDEA, Branch: Stockholm, SwiftCode: NDEASESS<br>Account no: SE 74 3000 0000 0339 8775 3482<br>Correspondent Bank New York: JP Morgan Chase Bank<br>Swift Code: CHASUS33, ABK routing: 021 000 021<br>Message upon payment: Bossa hire peyment |
| 21. Place or range of re-delivery (Cl. 7)<br>Passing SKAW outbound or passing Passero Westbound in CHOPT, resp. redelivery DLOSP 1 SP N. Cont (Hamburg/Gibraltar range including UK) or WMed (West of Passero) in CHOPT ATDNSHINC | 22. War (only to be filled in if Section (C) agreed) (Cl. 21) |
| 23. Cancelling date (Cl. 22)<br>2400 hours 12th April 2005 | 24. Place of arbitration (only to be filled in if place other than London agreed)(Cl.23) |
| 25. Brokerage commission and to whom payable (Cl. 25)<br>1.25% address commission plus<br>1.25% to Ocean Reefer Services Limited on hire and ballast bonus | 26. Numbers of additional clauses covering special provisions, if agreed<br>Clauses 26 - 79, as attached to be included in this Charter Party |

This document is a computer generated BALTIME 1939 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

# PART II
## "BALTIME 1939" Uniform Time-Charter (Box Layout 1974)

It is agreed between the party mentioned in Box 3 [1] as Owners of the Vessel named in Box 5 of the [2] gross/net Register tonnage indicated in Box 6, [3] classed as stated in Box 7 and of indicated brake horse [4]

power as stated in Box 8, carrying about the [5] number of tons deadweight indicated in Box 9 on [6] Board of Trade summer freeboard inclusive of bunkers, stores, provisions and boiler water, having as [7][8] per builder's plan a cubic-feet reefer grain/bale capacity [9]

as stated in Box 10, exclusive of permanent bunkers, which contain about the number of tons [10][11] stated in Box 11, and fully loaded capable of [12] steaming about the number of knots indicated in [13] Box 12 in good weather and smooth water on a [14] consumption of about the number of tons best [15] Welsh coal or oil-fuel stated in Box 12, now in [16] position as stated in Box 13 and the party mentioned as Charterers in Box 4, as follows: [17][18]

**1. Period/Port of Delivery/Time of Delivery** ~~The Owners let, and the Charterers hire the Vessel for a period of the number of calendar months indicated in Box 14 from the time (not a Sunday or a legal Holiday unless taken over) the Vessel is delivered and placed at the disposal of the Charterers between 9 a.m. and 6 p.m., or between 9 a.m. and 2 p.m. if on Saturday, at the port stated in Box 15 in such available berth where she can safely lie always afloat, at the Charterers may direct, she being in every way fitted for ordinary cargo service. The Vessel to be delivered at the time indicated in Box 16.~~ [19–32]

**2. Trade** [33]
The Vessel to be employed in lawful trades for [34] the carriage of lawful merchandise only between [35] good and safe ports or places where she can [36] Safely get and lie always afloat within the limits stated in [37] Box 17. [38] No live stock nor injurious, inflammable or dangerous goods (such as acids, explosives, calcium [39][40] carbide, ferro silicon, naphtha, motor spirit, tar, [41] or any of their products) to be shipped. [42]

**3. Owners to Provide** [43]
The Owners to provide and pay for all provisions [44] and wages, for insurance of the Vessel, for all [45] deck and engine-room stores including [46] lubricating oil and maintain her in a thoroughly efficient state in hull and machinery [47] during service. [48] The Owners to provide one winchman per hatch. [49] If further winchmen are required, or if the stevedores refuse or are not permitted to work with [50][51] the Crew, the Charterers to provide and pay [52] qualified shore-winchmen. Owners to maintain [53] proper P&I insurance throughout the charter. [54]

**4. Charterers to Provide** [55]
The Charterers to provide and pay for all ~~fuel and diesel oil including for domestic use~~ coals, [56] including galley coal, ~~oil-fuel,~~ water for boilers, [57] port charges, pilotages (whether ~~compulsory~~ customary or [58] not), canal steersmen, boatage, lights, tug-assistance, consular charges (except those pertaining [59][60] to the Master, Officers and Crew), canal, dock and [61] other dues and charges, including any foreign [62] general municipality or state taxes, also all dock, [63] harbour and tonnage dues at the ports of delivery and re-delivery (unless incurred through [64][65] cargo carried before delivery or after re-delivery), [66] agencies, commissions, also to arrange and pay [66]

for loading, trimming, stowing (including dunnage [67] and shifting boards, excepting any already on [68] board), unloading, weighing, tallying and delivery [69] of cargoes, surveys on hatches, meals supplied to [70] officials and men in their service and all other [71] charges and expenses whatsoever including detention and expenses through quarantine (including cost of fumigation and disinfection) except as [72][73][74] such relate to crew illness. All ropes, slings and special runners actually [75] used for loading and discharging and any special [76] gear, including special ropes, hawsers and chains [77] required by the custom of the port for mooring [78] to be for the Charterers' account. The Vessel to [79] be fitted with winches, derricks, wheels and ordinary runners capable of handling lifts up to one [80][81] clause 62 ~~tons~~ [82]

**5. Bunkers See clause 42** [83]
~~The Charterers at port of delivery and the Owners at port of re-delivery to take over and pay for all coal or oil-fuel remaining in the Vessel's bunkers at current prices at the respective ports. The Vessel to be re-delivered without less than the number of tons and not exceeding the number of tons of coal or oil fuel in the Vessel's bunkers stated in Box 18.~~ [84–91]

**6. Hire** [92]
The Charterers to pay as hire the rate stated in [93] Box 19 per 30 days, commencing in accordance [94] with Clause 1 until her re-delivery to the Owners. [95]
*Payment* [96]
Payment of hire to be made in cash, in the currency stated in Box 20, without discount, every [97][98] ~~15~~ 30 days, in advance, and in the manner prescribed [99] in Box 20. See also clause 75 [100] In default of payment the Owners to have the [101] right of withdrawing the Vessel from the service [102] of the Charterers, without noting any protest and [103] without interference by any court or any other [104] formality whatsoever and without prejudice to [105] any claim the Owners may otherwise have on the [106] Charterers under the Charter. [107]

**7. Re-delivery** [108]
The Vessel to be re-delivered on the expiration [109] of the Charter in the same good order as when [110] delivered to the Charterers (fair wear and tear [111] excepted) at an ice-free port in the Charterers' [112] option at the place or within the range stated in [113] Box 21, ~~between 9 a.m. and 6 p.m., and 9 a.m. and 2 p.m. on Saturday, but the day of re-delivery shall not be a Sunday or legal Holiday.~~ [114][115][116]
*Notice* [117]
~~The Charterers to give the Owners not less than ten days' notice at which port and on about which day the Vessel will be re-delivered. Should the Vessel be ordered on a voyage by which the Charter period is exceeded the Charterers to have the use of the Vessel to enable them to complete the voyage; provided it could be reasonably calculated that the voyage would allow re-delivery about the time fixed for the termination of the Charter, but for any time exceeding the termination date the Charterers to pay the market rate if higher than the rate stipulated herein.~~ [118–130]

**8. Cargo Space** [131]
The whole reach and burthen of the Vessel, including lawful deck-capacity to be at the Charterers' disposal, reserving proper and sufficient [132][133][134] space for the Vessel's Master, Officers, Crew, [135] tackle, apparel, furniture, provisions and stores. [136]

**9. Master** [137]
The Master to prosecute all voyages with the utmost despatch and to render customary assistance with the Vessel's Crew. The Master to be [138][139][140] under the orders of the Charterers as regards [141] employment, agency, or other arrangements. The [142] Charterers to indemnify the Owners against all [143] consequences or liabilities arising from the Master, Officers or Agents signing Bills of Lading [144][145] or other documents or otherwise complying with [146] such orders, as well as from any irregularity in [147] the Vessel's papers or for overcarrying goods. [148] The Owners not to be responsible for shortage, [149] mixture, marks, nor for number of pieces or [150] packages, nor for damage to or claims on cargo [151] caused by bad stowage or otherwise. [152] If the Charterers have reason to be dissatisfied [153] with the conduct of the Master, Officers, or Engineers, the Owners, on receiving particulars of [154][155] the complaint, promptly to investigate the matter, [156] and, if necessary and practicable, to make a [157] change in the appointments. [158]

**10. Directions and Logs** [159]
The Charterers to furnish the Master with all instructions and sailing directions and the Master [160][161] and Engineer to keep full and correct logs accessible to the Charterers or their Agents. Log [162][163] abstracts to be sent to the Charterers after each voyage in English language.

**11. Suspension of Hire etc.** [164]
(A) In the event of drydocking or other necessary [165] measures to maintain the efficiency of the Vessel, [166] deficiency of men or Owners' stores, breakdown of machinery, damage to hull or other accident, either hindering or preventing the working of the Vessel and continuing for more than [167][168][169][170] twentyfour consecutive hours, no hire to be paid [171] in respect of any time lost thereby during the [172] period in which the Vessel is unable to perform [173] the service immediately required. Any hire paid [174] in advance to be adjusted accordingly. [175]
(B) In the event of the Vessel being driven into [176] port or to anchorage through stress of weather, [177] trading to shallow harbours or to rivers or ports [178] with bars or suffering an accident to her cargo, [179] any detention of the Vessel and/or expenses resulting from such detention to be for the Charterers' account ~~even~~ except if such detention and/or ex- [180][181][182] penses, or the cause by reason of which either [183] is incurred, be due to, or be contributed to [184] by, the negligence of the Owners' servants. [185]

**12. Cleaning Boilers** [186]
Cleaning of boilers whenever possible to be done [187] during service, but if impossible the Charterers [188] to give the Owners necessary time for cleaning. [189] Should the Vessel be detained beyond 48 hours [190] hire to cease until again ready. [191]

**13. Responsibility and Exemption** [192]
The Owners only to be responsible for delay in [193] delivery of the Vessel or for delay during the [194] currency of the Charter and for loss or damage [195] to goods onboard, if such delay or loss has been [196] caused by want of due diligence on the part of [197] the Owners or their Manager or their superintendents. In making the Vessel seaworthy and fitted for the voyage or any [198][199] other personal act or omission or default of the [200] Owners or their Manager. The Owners not to be [201] responsible in any other case nor for damage or [202] delay whatsoever and howsoever caused even if [203]

This document is a computer generated BALTIME 1939 form printed by authority of BIMCO. Any insertion or deletion to this form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document

PART II
"BALTIME 1939" Uniform Time-Charter (Box Layout 1974)

unless 203
caused by the neglect or default of their ser- 204
vants. The Owners not to be liable for loss or 205
damage arising or resulting from strikes, lock- 206
outs or stoppage or restraint of labour (including 207
the Master, Officers or Crew) whether partial or 208
general. 209
The Charterers to be responsible for loss or dam- 210
age caused to the Vessel or to the Owners by 211
goods being loaded contrary to the terms of the 212
Charter or by improper or careless bunkering or 213
loading, stowing or discharging of goods or any 214
other improper or negligent act on their part or 215
that of their servants. 216

14. Advances 217
The Charterers or their Agents to advance to the 218
Master, if required, necessary funds for ordinary 219
disbursements for the Vessel's account at any 220
port charging 2.5 pct commission only interest at 221
6 per cent. p. a., 222
such advances to be deducted from hire. 223

15. Excluded Ports 224
The Vessel not to be ordered to nor bound to 225
enter: a) any place where fever or epidemics are 226
prevalent or to which the Master, Officers and 227
Crew by law are not bound to follow the Vessel. 228
Ice 229
b) any ice-bound place or any place where lights, 230
lightships, marks and buoys are or are likely to 231
be withdrawn by reason of ice on the Vessel's 232
arrival or where there is risk that ordinarily the 233
Vessel will not be able on account of ice to 234
reach the place or to get out after having com- 235
pleted loading or discharging. The Vessel not to 236
be obliged to force ice. If on account of ice the 237
Master considers it dangerous to remain at the 238
loading or discharging place for fear of the Ves- 239
sel being frozen in and/or damaged, he has 240
liberty to sail to a convenient open place and 241
await the Charterers' fresh instructions. 242
Unforeseen detention through any of above cau- 243
ses to be for the Charterers' account. 244

16. Loss of Vessel 245
Should the Vessel be lost or missing, hire to 246
cease from the date when she was lost. If the 247
date of loss cannot be ascertained half hire to 248
be paid from the date the Vessel was last re- 249
ported until the calculated date of arrival at the 250
destination. Any hire paid in advance to be ad- 251
justed accordingly. 252

17. Overtime 253
The Vessel to work day and night if required by 254
Charterers, overtime being included in the hire. 255
The Charterers to refund the Owners their out- 256
lays for all overtime paid to Officers and Crew 257
according to the hours and rates stated in the 258
Vessel's articles. 259

18. Lien 260
The Owners to have a lien upon all cargoes and 261
sub-freights belonging to the Time-Charterers and 262
any Bill of Lading freight for all claims under 263
this Charter, and the Charterers to have a lien 264
on the Vessel for all moneys paid in advance 265

and not earned. 264

19. Salvage 265
All salvage and assistance to other vessels to be 266
for the Owners' and the Charterers' equal benefit 267
after deducting the Master's and Crew's propor- 268
tion and all legal and other expenses including 269
hire paid under the charter for time lost in the 270
salvage, also repairs of damage and coal or oil- 271
fuel consumed. The Charterers to be bound by 272
all measures taken by the Owners in order to 273
secure payment of salvage and to fix its amount. 274

20. Sublet 275
The Charterers to have the option of subletting 276
the Vessel, giving due notice to the Owners, but 277
the original Charterers always to remain respon- 278
sible to the Owners for due performance of the 279
Charter. 280

21. War 281
(A) The Vessel unless the consent of the Owners 282
be first obtained not to be ordered nor continue 283
to any place or on any voyage nor be used on 284
any service which will bring her within a zone 285
which is dangerous as the result of any actual 286
or threatened act of war, war hostilities, warlike 287
operations, acts of piracy or of hostility or ma- 288
licious damage against this or any other vessel 289
or its cargo by any person, body or State what- 290
soever, revolution, civil war, civil commotion or 291
the operation of international law, nor be ex- 292
posed in any way to any risks or penalties whatso- 293
ever consequent upon the imposition of Sanc- 294
tions, nor carry any goods that may in any way 295
expose her to any risks of seizure, capture, pe- 296
nalties or any other interference of any kind 297
whatsoever by the belligerent or fighting powers 298
or parties or by any Government or Ruler. 299
(B) Should the Vessel approach or be brought or 300
ordered within such zone, or be exposed in any 301
way to the said risks, (1) the Owners to be en- 302
titled from time to time to insure their interests 303
in the Vessel and/or hire against any of the risks 304
likely to be involved thereby on such terms as 305
they shall think fit, the Charterers to make a re- 306
fund to the Owners of the premium on demand; 307
and (2) notwithstanding the terms of Clause 11 308
hire to be paid for all time lost including any 309
lost owing to loss of or injury to the Master, 310
Officers, or Crew or to the action of the Crew in 311
refusing to proceed to such zone or to be ex- 312
posed to such risks. 313
(C) In the event of the wages of the Master, Of- 314
ficers and/or Crew or the cost of provisions and/ 315
or stores for deck and/or engine room and/or 316
insurance premiums being increased by reason 317
of or during the existence of any of the matters 318
mentioned in section (A) the amount of any in- 319
crease to be added to the hire and paid by the 320
Charterers on production of the Owners' account 321
therefor, such account being rendered monthly. 322
(D) The Vessel to have liberty to comply with 323
any orders or directions as to departure, arrival, 324
routes, ports of call, stoppages, destination, de- 325
livery or in any other wise whatsoever given by 326
the Government of the nation under whose flag 327
the Vessel sails or any other Government or any 328

person (or body) acting or purporting to act with 329
the authority of such Government of by any com- 330
mittee or person having under the terms of the 331
war risks insurance on the Vessel the right to 332
give any such orders or directions. 333
(E) In the event of the nation under whose flag 334
the Vessel sails becoming involved in war, ho- 335
stilities, warlike operations, revolution, or civil 336
commotion, both the Owners and the Charterers 337
may cancel the Charter and, unless otherwise 338
agreed, the Vessel to be re-delivered to the Owners 339
at the port of destination or, if prevented 340
through the provisions of section (A) from reach- 341
ing or entering it, then at a near open and safe 342
port at the Owners' option, after discharge of any 343
cargo on board. 344
(F) If in compliance with the provisions of this 345
clause anything is done or is not done, such not 346
to be deemed a deviation. 347
Section (C) is optional and should be considered 348
deleted unless agreed according to Box 22 349

22. Cancelling 350
Should the Vessel not be delivered by the date 351
indicated in Box 23, the Charterers to have the 352
option of cancelling. 353
If the Vessel cannot be delivered by the cancel- 354
ling date, the Charterers, if required, to declare 355
within 48 hours after receiving notice thereof 356
whether they cancel or will take delivery of the 357
Vessel. 358

23. Arbitration 359
Any dispute arising under the Charter to be re- 360
ferred to arbitration in London (or such other 361
place as may be agreed according to Box 24 ) 362
one Arbitrator to be nominated by the Owners 363
and the other by the Charterers, and in case the 364
Arbitrators shall not agree then to the decision 365
of an Umpire to be appointed by them, the award 366
of the Arbitrators or the Umpire to be final and 367
binding upon both parties. This Charter Party 368
shall be governed by and construed in 369
accordance with English law. 370

24. General Average 369
General Average to be settled in London 370
according to York/ 371
Antwerp Rules, 1974. Hire not to contribute to 371
General Average. 372

25. Commission 373
The Owners to pay a commission at the rate 374
stated in Box 25 to the party mentioned in Box 375
25 on any hire and ballast bonus paid under the 376
Charter, but in no 377
case less than is necessary to cover the actual 377
expenses of the Brokers and a reasonable fee 378
for their work. If the full hire is not paid owing 379
to breach of Charter by either of the parties the 380
party liable therefor to indemnify the Brokers 381
against their loss of commission. 382
Should the parties agree to cancel the Charter, 383
the Owners to indemnify the Brokers against any 384
loss of commission but in such case the com- 385
mission not to exceed the brokerage on one 386
year's hire. 387

This document is a computer generated BALTIME 1939 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document

**Riders to Charter Party**
**MV " Bosse " dated Hornchurch 1ˢᵗ April 2005**

### 26. Delivery Conditions

The vessel to be delivered with refrigerated chambers clean swept and free of smell to the satisfaction of Lloyd's or equivalent surveyor and tight staunch and in every way fitted for the carriage of bananas and/or other fresh fruit and/or frozen food commodities including frozen meat and poultry.

### 27. Gratings

The vessel to be fitted with gratings on all decks. All gratings on all decks/tanktops capable of carrying pneumatic rubberwheel forklift trucks up to 5,0 tons total weight (truck plus cargo) and with four wheels, one in each corner.

### 28. Refrigeration

The vessel to have refrigeration machinery and insulation and hold separations capable of maintaining simultaneously different temperatures in each of her eight (8) cooling sections as required by the Charterers but not below minus 30 degrees Celsius, during the whole duration of this charter for carrying full cargoes of bananas, fresh fruit, frozen meat, dairy produce, frozen poultry, frozen fish and/or other frozen food commodities. The refrigeration machinery and appliances in the vessel shall at all times be in an efficient state as described and set forth in the rules and regulations of vessel's classification society for the R.M.C. requirements applicable to carriage of fruit and are to be maintained in that class for the whole duration of this Charter Party.

The Owners shall at all times provide a valid Refrigeration Certificate issued by recognised classification society without notation or outstanding recommendation attesting to the good working order of the vessel's refrigeration equipment. The ship's officers shall ensure that the temperatures and ventilation instructions as directed by Charterers in writing are adhered to explicitly with the ordinary accepted practice applicable to the cargo being carried and that the ventilation as installed is functioning as required by Charterers. The Owners are responsible for the good condition and proper functioning of the refrigeration equipment as installed and in accordance with the written instructions of the Charterers. The refrigeration machinery and appliances shall always be under the supervision and control of a fully qualified engineer who can be an officer of the vessel.

Officers to be fully qualified, experienced and skilled in the handling and transportation of banana and other refrigerated cargoes.

All supplies necessary for the maintenance and operation of the refrigeration equipment to be entirely at Owner's expense.

### 29. Remote Reading Thermometer

The vessel is to be equipped with remote reading thermometers, $CO_2$ detectors, which to be maintained in good working order for the whole duration of this Charter Party.

**Riders to Charter Party**
**MV " Bosse " dated Hornchurch 1ˢᵗ April 2005**

### 30. Wireless

The vessel to be equipped with a wireless installation and carry a fully qualified wireless operator, who, however, may be one of the vessel's officers.

### 31. Electric Light

The vessel to supply, as and when required, sufficient electric light and lamps at all hatches and in all holds for night work.

### 32. Drydocking

Vessel is not scheduled for drydocking during the expected period of this Charter, however, vessel is allowed to effect repairs in case of emergency.

### 33. Stevedore Damage

The Charterers are not to be responsible for any stevedores' damage and any other damage, unless same is reported by Master in writing to Charterers and/or their agent at port where the damage was incurred. Master to endeavour to obtain written acknowledgement of the responsible party and have a survey made to define and estimate the damage in agreement with Charterer's agents or supercargo, however, cost of survey to be for Charterer's account, unless the damage should have been repaired in the meantime. Charterer has the right to redeliver the vessel to Owners without repairing the damage in case stevedore damage does not affect the vessel's seaworthiness.

### 34. Breakdown of Winches/Cranes

In the event of a breakdown of a winch or winches by reason of disablement or insufficient power, the hire to be reduced pro rata for the period of such inefficiency in relation to the number of winches available. The Owners agree to pay in addition the cost of labour affected by the breakdown either stood off or additionally engaged and also possible shore crane hire. If shore appliance are hired by Owners, the hire of the vessel to be paid in full.

### 35. Deratting Certificate

The vessel to be delivered with valid deratting exemption certificate on board, and if this does not cover the whole period of this Charter and renewal of certificate and sanitary inspection certificate or fumigation is necessary, cost of same and delay of the vessel and any expenses incurred therefrom to be for Owners' account.

2

**Riders to Charter Party**
**MV " Bosse " dated Hornchurch 1st April 2005**

### 36. Insurance Premium

Charterers to have the benefit of any return insurance premium, received by Owners from Underwriters (as and when received from Underwriters) by reason of the vessel being in port for a minimum period of 30 (thirty) days provided the vessel is on hire.

### 37. Supercargo

The Charterers are to have the right to embark a supercargo on the vessel, the same not to be considered as a passenger, but to be treated as an officer of the vessel. The Charterers to pay USD8 per day for victualling.

### 38. Houseflag/Funnel

Charterers to have the liberty to fly their own house flag and to paint the funnel in their own colours at their expense. On delivery Charterers to have the option of redelivering vessel without repainting funnel to original colours in which case a lumpsum of USD 500.00 to be paid by Charterers.

### 39. Deviation, Put Back

Should the vessel have to deviate or put back while on voyage for any of the reasons mentioned in Clause 11(A), the vessel will go off-hire for all time lost, i.e. from the time she starts deviating or putting back until she be again in the same position and the voyage resumed therefrom. The cost of extra fuel consumed and any other extra expenses thus incurred shall be for Owner's account.

### 40. Nature of Cargo

The Charterers have the liberty to load in the vessel lawful general cargo, but not of a nature likely to be injurious to the vessel's fruit deck, bin gratings, insulations etc., either by its smell or otherwise. Charterers have the liberty to load unpacked cars, (in live condition) as customary for reefer ships.

### 41. Seizure, Detention, Arrest

Should the vessel be seized or detained or arrested or delayed by any authority during the currency of this Charter Party, the Charterers' liability for seizure or detention or arrest or delay is ceased immediately from the time of her seizure or detention or arrest or delay and all time lost by this reason shall be treated as off-hire until the time of her release unless such seizure or detention or arrest or delay is occasioned by any personal act or omission or default of Charterers or their Agents.

The Owners shall indemnify consequences the Charterers may suffer or incur by reason of her seizure or detention or arrest or delay, even if such reason frustrates this Charter Party.

3

## Riders to Charter Party
## MV " Bosse " dated Hornchurch 1st April 2005

### 42. Bunkers

Bunkers same/same, minor differences to be settled at Platts prices at port, date, time of  port of redelivery or closest thereto. Vessel to be delivered with sufficient bunkers to safely reach Skaw or Gibraltar inbound.

### 43. Deviation owing to Sickness or Accident

If, during the currency of this Charter Party there is any deviation during the course of the voyage or any loss of time whatsoever, caused by sickness or by accident to crew or any person on board the vessel (other than passengers or supercargo travelling under Charterer's auspices), vessel to go off-hire for all time lost, and the cost of extra fuel consumed and any other extra expenses incurred shall be for Owner's account.

### 44. War

In the event of outbreak of war between any of the Great Powers, China, France, Great Britain, U.S.A., C.I.S., Japan and the nation of the vessel's flag, the Charterers and the Owners shall have the option of cancelling this Charter Party.

### 45. New Jason, Both-to-Blame

New Jason, Both-to-Blame Collision Clause and (War Risk Clause 1 & 2) and U.S.A. Clause Paramount to form part of and be incorporated in this Charter Party as attached.

### 46. Balance of Hire on Redelivery

Notwithstanding any provision to the contrary, Charterers may deduct from any monthly charter hire, any amount disbursed for Owners' account and supported by paid vouchers. Charterers may also deduct prior to redelivery the estimated expenses paid or to be paid by them for Owners' account, however, all accounts to be settled in a timely manner.

### 47. Pollution

Without prejudice to anything elsewhere contained in this charter, the Owners undertake during the currency of this charter to comply with the requirements of US Public Law 95-217 and any revision thereof regarding financial responsibility or otherwise and also with the requirements of any other legislation whatsoever and wheresoever relating to oil pollution.

Should the vessel be delayed by reason of a breach of this clause, no hire is to be paid in respect of time lost thereby during the period the vessel is unable to perform the service immediately required. Any hire paid in advance to be adjusted accordingly. Charterers shall be under no responsibility for all oil or other pollution damage (including loss of time) and Owners shall indemnify Charterers against all consequences (including fines if imposed on Charterers) of oil or other pollution damage.

4

## Riders to Charter Party
## MV " Bosse " dated Hornchurch 1ˢᵗ April 2005

### 48. Owners Insurance

Owners guarantee the vessel is fully insured in respect of hull and machinery (Lloyd's policies or similar) and in respect of P & I (normal English or Scandinavian Club Rules or similar). Charterers have the benefit of Owners' coverage granted by the P & I Club so far as the Club rule permit. Charterers are not responsible for damage to the vessel in case the damage is recoverable under Owners' hull insurance policy and Owners are entitled to waive their right of recourse.

Owners P & I Club:    GARD

### 49. Cleaning of Holds

Charterers to have the option of redelivering the vessel before cleaning holds in which case a lumpsum of USD 1,000 is payable by Charterers.

Cleaning work of vessel's holds and preparing the ship for the next cargo to be done by the vessel's crew against payment by Charterers of USD 125 per hatch for sweeping, and USD 250 for sweeping and washing.

### 50. Navigation Etc.

Nothing in this Charter Party is to be construed as a demise of the vessel to the time charterers. The Owners to remain responsible for the navigation of the vessel, acts of pilots, tugboats etc., insurance, crew and all other matters, same as when trading for their own account.

### 51. Communication, Entertainment and Victualling Expenses

Charterers to pay lumpsum USD 950 for communication, representation, entertainment and victualling together with regular hire payment.

### 52. Watchman

Gangway watchmen to be for the account of the party who appoint the same. However, expenses for compulsory gangway watchmen to be for Charterers' account.

### 53. On-Off-Hire Survey

Joint on/off-hire survey to ascertain the vessel's condition and quantity of bunkers remaining on board shall be carried out at first loading port and last discharging port. Joint on-hire survey to be carried out in Owners time and joint off-hire survey in Charterer's time, but expenses to be equally shared between Owners and Charterers.

5

## Riders to Charter Party
## MV " Bosse " dated Hornchurch 1st April 2005

### 54. Preloading Survey

Prior to loading, a loading port survey may be held according to the rules of the vessel's classification society, and expense to be for Charterer's account. Master to arrange that one signed copy of loading port survey certificate is forwarded to Charterers soonest possible, and also that one copy is kept on board.

### 55. IWL Limits

Charterers to have the option of trading outside Institute Warranty Limits after getting Owners' consent which, however, shall not be unreasonably withheld. Extra insurance hence incurred to be for Charterers' account.

### 56. U.S. Coast Guard Prevention Regulations

Vessel to comply with U.S. Coast Guard Pollution Prevention Regulations of 1st July, 1974, and any revision of these regulations eventually.

### 57. Signing of Bills of Lading

Charterers or their agents are authorised to sign Bills of Lading on behalf of Master in accordance with loading tally mate's receipts etc. Whenever Charterers carry their own cargo, Owners accept Reefer Bill of Lading form to be used.

### 58. Charterer's Equipment

The Master, Owners to be responsible to Charterers for all gear, equipment and/or stores supplied to the vessel by or for Charterer's account. The Master to keep a record of all such gear, equipment and/or stores so supplied and to maintain same in good condition. Such gear, equipment and/or stores to be redelivered to Charterers prior to redelivery of the vessel to Owners or if required by Charterers, at any time during the period of the Charter in like good condition as supplied (fair wear and tear excepted). Owners to make good any shortage and/or damage unaccounted for.

### 59. Opening and Closing of Hatches

All opening and closing of hatches to be performed by vessel's crew without any extra expense to Charterers, if custom of the port allows.

6

**Riders to Charter Party**
**MV " Bosse " dated Hornchurch 1st April 2005**

### 60. War Risk Insurance

Basic War risk insurance premium for worldwide trading to be for Owner's account. Any additional premiums for hull and machinery and Officers/crew for trading to restricted area, also crew war bonus, if any, to be for Charterer's account. The orders of Owner's war risk underwriters always to be followed.

### 61. Bunker Supply

Charterers to order bunker oil of correct quality (within the usual tolerance) in accordance with vessel's description stated in Clause 62 of this Charter Party. Master and/or Chief Engineer to make every effort to make sure that all bunker oil supplied to the vessel by Charterers or their agents during this timecharter comply with above quality. Replenishment of bunkers is arranged and paid by Charterers, but always under the supervision of Master. Owners and Charterers to analyse quality of bunkers jointly in case Owners should claim poor quality.

### 62.    Description of Vessel M/V "BOSSE"

Flag: Cayman Islands            Built: Japan 1984            Call Sign: ZCGN 8
Sat "C" No: 431 962 910        Total Cubic: 439,462 ft$^3$        Deck Area: 4,909 m$^2$
Class: NKK                        Number of Holds / Hatches / Compartments: 4 / 4 / 15
4 Side Ports each side           Port of Registry -- George Town        Cranes: 4 x 15 mt
Weather Deck Hatch Openings:    11.70 m x 7.50 m    Summer Deadweight: 9,321 on 8.67 m
L.O.A – 149.03 m                Breadth – 20.60 m            Depth – 13.00 m
International - GRT/NRT: 9032/4268        Panama Canal - GRT/NRT: 10016/7847
Suez Canal - GRT/NRT: 9765/8816        Temperature Range: -25ºC / +32ºC

| Cargo Holds    ft$^3$ | m$^2$ |
|---|---|
| Hold 1 A-Deck 26,093 | 221 |
| Hold 1 B-Deck 12,887 | 147 |
| Hold 1 C-Deck 11,316 | 141 |

| *Hold 1 Total* | *50,296* | *509* |
|---|---|---|

| | | |
|---|---|---|
| Hold 2 A-Deck 38,056 | 392 | |
| Hold 2 B-Deck 31,382 | 370 | |
| Hold 2 C-Deck 28,803 | 343 | |
| Hold 2 D-Deck 25,343 | 282 | |
| **Hold 2 Total** | **123,584** | **1,387** |

7

**Riders to Charter Party**
**MV " Bosse " dated Hornchurch 1st April 2005**

| | | | |
|---|---|---|---|
| Hold 3 A-Deck36,421 | 385 | | |
| Hold 3 B-Deck32,355 | 391 | | |
| Hold 3 C-Deck32,084 | 390 | | |
| Hold 3 D-Deck | 31,756 | | 370 |
| **Hold 3 Total** | **132,616** | | **1,536** |
| Hold 4 A-Deck38,858 | | 414 | |
| Hold 4 B-Deck34,751 | | 417 | |
| *Hold 4 C-Deck32,861* | | *378* | |
| *Hold 4 D-Deck26,496* | | *268* | |
| *Hold 4 Total* | *132,966* | | *1,477* |
| **GRAND TOTAL** | **439,462** | | **4,909** |

Reefer plant: R22 Direct Expansion - Air Circulation: 90/hour – Air Renewal : 1.4/hour
Wooden Gratings – Maximum load 5 tons.
Forklifts to have four wheels with pneumatic tyres, one in each corner, with a max weight of 5 tons including cargo.

Reefer Containers: 30 plugs  12 FEU + 18 TEU
(Container Loading only after Masters/Owners approval)
Engine: Akasaka-Mitsubishi 7UECS52HA - 9600 HP @ 160 rpm

Speed & Consumptions: Weather Conditions – Less than Beaufort 2
Banana: 18.5kts     ME – 31.0 mt IFO 380     AE – 6.5 mt Blended Fuel (50% IFO + 50% MDO)
When carrying containers the fuel consumption for Main Engine & Auxiliary Engines may increase.

All figures given for guidance only and without guarantee

### 63. Canal Transit

Vessel is fully fitted for Panama/Suez Canal transit and in possession of necessary certificate onboard, in conformity with current canal regulations/requirements.

### 64. Quarantine

Normal quarantine time and expenses to enter the port to be for Charterers' account but any time of detention and expenses for quarantine due to pestilence, illness etc. of Master, Officers and Crew to be for Owners' account.

## Riders to Charter Party
## MV " Bosse " dated Hornchurch 1st April 2005

### 65. Vaccination Certificates

Owners to arrange at their expense that Master, Officers and Crew of vessel hold valid vaccination certificates against cholera or other necessary health certificates during the charter.

### 66. Stowage

Owners and Master to undertake best efforts to co-operate with Charterers for best stowage of cargo, and Master to make best efforts to collect, re-stow, and provide any useful dunnage, lashings, etc., not broken for next use after completion of the voyage, during the currency of this charter.

### 67. Smuggling

Any delay, expenses and/or fines incurred on account of smuggling to be for Charterers' account if caused by Charterers, supercargo and/or their staff or Agents, or to be for Owners' account if caused by Officers and/or Crew.

### 68. Owners' Matters

Owners to appoint Charterers' Agents to attend to normal Owner' matters, such as delivery, redelivery, hospitalisation, repatriation of crew, supply of vessel's stores and provisions. Charterers to agree to have their Agents attend to such matters with Owners paying Charterers' Agents actual expenses and Agency fee according to Charterers' tariff rate.Owners always appoint their Agents for attending major repair, dry docking and general average.

### 69. Excluded Countries

Should the political situation change to the extent not to affect the trading to the other countries than the aforementioned excluded countries, Charterers are allowed to trade to such excluded countries after obtaining the Owners' consent, which however, shall not be withheld unreasonably.

### 70. Deviation

Owners shall have the liberty to deviate for the purpose of saving life at sea and landing the person saved, but in case it is found the person is a refugee, Owners to bear all of time thereby lost and all other extra expenses arising therefrom.

**Riders to Charter Party**
**MV " Bosse " dated Hornchurch 1st April 2005**

### 71. Requisition

Should the vessel be requisitioned by any Government or Governmental Authority during the period of this charter, she shall be off-hire during the period of such requisition and any hire or other compensation paid by any Government or Governmental Authority in respect of such requisition shall be for Owners' account, however, Charterers have the option of cancelling the balance period of this charter.

### 72. Certificates

Vessel to be delivered with valid safety certificates and certificates of efficiency of working equipment issued by or on behalf of appropriate authorities, to be kept valid during the currency of the Charter Party at Owners' expense and no hire to be paid in respect of any time lost by reason of any defect, invalidity or expiry of such certificates.

### 73. Notices

Charterers to give Owners 15 days advance notice of time and port and 10/5/3/2/1 days definite notice of redelivery.

### 74. ITF Compliance

Owners guarantee that the vessel's manning is and will be, during the full duration of the charter period, in accordance with ITF rules and regulations for worldwide trading, and any consequences and losses if due to non-compliance to be for Owners' account.

### 75. Hire Calculation

For the purpose of hire calculation, the times of delivery and redelivery or termination of the charter shall be calculated basis local time.

### 76.

Owners confirm that vessel is not on the Arab blacklist.

### 77.    Syria

Charterers can trade Syria if required on basis that Charterers will provide an LOI in respect of present or future Customs fines in respect of this Charter.

**Riders to Charter Party**
**MV " Bosse " dated Hornchurch 1st April 2005**

78.    **Hire and Delivery Ballast Bonus**

Hire USC135 per cuft / 30 days including overtime.

Delivery ballast bonus from point of delivery to point of redelivery distance as per BP distance tables at 18.5 knots based on hire at USC135 + bunkers at vessels 18.5 knot ballast consumption (ME + AUX – 28 MT IF 380 CST + 1.5 MT MDO / 1.5 MT IF 380 CST).

Prices for BB to be Platts ruling at Gibraltar on date of delivery.

79.    **ISPS Clause for Time Charter Parties**

(a) (i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(II) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(b) (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

11

## Riders to Charter Party
## MV " Bosse " dated Hornchurch 1st April 2005

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party

### NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the goods, shippers, consignees or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If salving ship is owned and operated by the carrier, salvage shall be paid or as fully as if said salvage ship or ships belonged to strangers. Such deposit as the carriers or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or Owners of the goods to the carrier before delivery.

### BOTH TO BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party fails to be determined in accordance with the laws of the United States of America, the following clause shall apply:

'If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss of, or damage to, or any claim whatsoever of the Owners of said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of said goods and set-off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or Carrier.

12

**Riders to Charter Party**
**MV " Bosse " dated Hornchurch 1ˢᵗ April 2005**

The foregoing provisions shall also apply where the Owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact.'

and the Charterers shall procure that all Bills of Ladings issued hereunder this Charter Party shall contain the same clause.


### U.S.A. CLAUSE PARAMOUNT

" This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved 16 April 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act.  If any terms of this Bill of Lading be repugnant to said Act to any extent, such terms shall be void to that extent, but no further".


### CHAMBER OF SHIPPING WAR RISK CLAUSES 1 & 2

1.      No Bills of Lading to be signed for any blockaded port and if the port of discharge be declared blockaded after Bills of Lading have been signed, or if the port to which the ship has been ordered to discharge either on signing Bills of Lading or thereafter be one to which the ship is or shall be prohibited from going by the Government of the Nation under whose flag the ship sails or by any other Government, the Owner shall discharge the cargo at any other port covered by this Charter Party as ordered by the Charterers (provided such other port is not a blockaded or prohibited port as above mentioned) and shall be entitled to freight as if the ship had discharged at the port or ports of discharge to which she was originally ordered.


2.      The ship shall have the liberty to comply with any orders or directions as to departure, arrival, routes, ports of call, stoppages, destination, delivery or otherwise however given by the Government of the Nation under whose flag the vessel sails or any department thereof, or by any other Government or any department thereof, or any person acting or purporting to act with the authority of such Government or of any department thereof, or by any committee or person having, under the terms of the War Risks Insurance on the ship, the right to give such orders or directions and if by reason of and in compliance with any such orders or directions anything is done or is not done, the same shall not be deemed a deviation, and delivery in accordance with such orders or directions shall be a fulfilment of the contract voyage and the freight shall be payable accordingly.


*******************************

13

## Riders to Charter Party
## MV " Bosse " dated Hornchurch 1st April 2005

### CERTIFICATION AND WARRANTY

TO    : Great White Fleet LTD, "GWF" , Charterers
FROM : Bosse Shipping Ltd. c/o Holy House Shipping,  Owners
RE    : Fixture of M/V " **Bosse**" Dated Hornchurch 1st April 2005

Dear Sirs,

In consideration of GWF chartering the m/v " **Bosse** " "Vessel" from Owners under terms of the fixture between ourselves dated 1st April, 2005 we hereby certify and warrant to GWF , as Charterers, that:

- (a) The vessel is in all respects seaworthy and capable of performing and completing its intended voyage,
- (b) All of its machinery, refrigeration equipment and auxiliary engines have been inspected and are in good working order and condition and are capable of completing the voyage with reasonable dispatch and of maintaining refrigerated cargo in accordance with charterer's carrying instructions,
- (c) The vessel is classified with a major, reputable classification society at the highest level available,
- (d) All hull and machinery surveys required by the vessel's classification society have been performed and that no outstanding items of class or visas presently exist and,
- (e) The officers and engineers are licensed, experienced and trained to properly operate the vessel and its machinery and to properly care for the cargo during the voyage

.............................................................
Owners

.............................................................
By

14