384-07/MEU/LJK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BOSSE SHIPPING LTD.,

                   Plaintiff,

    -against-

GREAT WHITE FLEET, LTD.,

                   Defendant.
--------------------------------------------------------x

**07 CIV 7221 (PKL)**

## PLAINTIFF'S RESPONSIVE MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
## AND VACATE ATTACHMENT

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff Bosse Shipping Ltd.
80 Pine Street
New York, NY 10005
(212) 425-1900 / (212) 425-1901 fax

Of counsel:
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

NYDOCS1/290066.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES      ii

PRELIMINARY STATEMENT      1

BACKGROUND FACTS      1

ARGUMENT

    POINT I

        BOSSE'S BURDEN UNDER RULE E IS
        SATISFIED AND THE ATTACHMENT
        SHOULD BE MAINTAINED      4

    POINT II

        THE CONTINGENT INDEMNITY PORTION
        OF THE ATTACHMENT IS RIPE ENOUGH
        TO SUPPORT A RULE B ATTACHMENT      7

    POINT III

        THIS ACTION SHOULD NOT BE DISMISSED      11

    POINT IV

        THE QUANTUM OF THE ATTACHMENT
        SHOULD NOT BE REDUCED      13

    POINT V

        GWF'S REQUEST TO AMEND ITS
        COMPLAINT SHOULD BE DENIED      15

CONCLUSION      17

## TABLE OF AUTHORITIES

**CASES**

Albright v. Oliver, 510 U.S. 266 (1994) ........................................................... 12

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006) ........... 4

Bergesen v. Lindholm, 760 F. Supp. 976 (D.CT. 1991) ................................................... 14

Bottiglieri di Navigazione, S.p.A. v. Tradeline LLC, 472 F.Supp.2d 588
   (S.D.N.Y. 2007) ............................................................................................... 11

Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324 (2d Cir. 2005) ..................... 12

Conley v. Gibson, 355 U.S. 41 (1957) ................................................................................ 12

Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS
   22409 (S.D.N.Y. Oct. 3, 2005) ......................................................................... 9

Dongbu Express Co. v. Navios Corp., 944 F. Supp. 235, 237 (S.D.N.Y. 1996) .............. 14

Eitzen Sealift A/S v. Cementos Andinos Dominicanos, S.A. de C.V., 2005 U.S. Dist.
   LEXIS 19876 (S.D.N.Y. Sept. 9, 2005) ........................................................... 14

Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761
   (S.D.N.Y. Oct. 25, 2005) ................................................................................... 6

Greenwich Marine, Inc. v. S.S. ALEXANDRA, 339 F.2d 901 (2d Cir. 1965) ................. 8

Hishon v. King & Spalding, 467 U.S. 69 (1984) ............................................................... 12

Ideal Steel Supply Corp. v. Anza, 373 F.3d 251 (2d Cir. 2004) ....................................... 12

J.K. Int'l Pvt. Ltd. v. Agriko S.A.S., 2007 U.S. Dist. LEXIS 10074 (S.D.N.Y. Feb. 13,
   2007) ................................................................................................................. 11

Jackson v. Birmingham Bd. of Educ., 544 U.S. 167 (2005) ............................................. 12

Maersk, Inc. v. Neewra, Inc., 443 F.Supp.2d 519 (S.D.N.Y. 2006) ................................. 11

Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F.Supp.2d 399
   (S.D.N.Y. 2007) ............................................................................................... 10

Newland v. Dalton, 81 F.3d 904, 907 (9th Cir. 1996) ...................................................... 16

Palette Marine, Ltd. v. Pacific Ocean Resources Ltd., S.D.N.Y. 06 CIV 13141 (RLC) .... 7

Rolls Royce Industrial Power (India) v. M/V FRATZIS M., 1996 A.M.C. 393 (S.D.N.Y. 1995) ............................................................................................................ 14

Scheuer v. Rhodes, 416 U.S. 232 (1974) ........................................................................ 12

Sea Transport Contractors, Ltd. v. Indus. Chemiques du Senegal, 411 F.Supp.2d 386 S.D.N.Y. 2006) .............................................................................................................. 13

Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd., 2007 U.S. Dist. LEXIS 19531 (S.D.N.Y. 2007) .................................................................................... 10

SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. Mar. 15, 2007) ............................................................................................... 4

Staronset Shipping Ltd. v. North Star Nav. Inc., 659 F. Supp. 189 (S.D.N.Y. 1987) .... 8, 9

T&O Shipping Ltd. v. Lydia Mar Shipping Co., 415 F.Supp.2d 310 (S.D.N.Y. 2006) ... 10

Tide Line Inc. v. Eastrade Commodities, Inc., 06 CIV 1979 (S.D.N.Y. Aug. 15, 2006) ... 4

Whitney-Fidalgo Seafoods v. MISS TAMMY, 542 F. Supp. 1302 (W.D.WA. 1982) .... 14

Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002) ...................................... 4

## OTHER AUTHORITIES

7A Moore's Federal Practice P E.14, at E-706 (2d ed. 1979). .......................................... 15

Benedict on Admiralty § 3.02[D][7] (2d ed. 1975) .......................................................... 14

G. Gilmore & D. Black, The Law of Admiralty § 9-89 2d ed. 1975) .............................. 15

## PRELIMINARY STATEMENT

Plaintiff BOSSE SHIPPING LTD. ("Bosse") respectfully submits this memorandum of law in opposition to the motion by Defendant Great White Fleet, Ltd. ("GWF") to dismiss the action and vacate the attachment. In opposing the motion, Bosse relies upon the accompanying Declarations of Bengt Åström and Michael Smith and the Affirmation of undersigned counsel to which the Court is respectfully referred. For the reasons that follow, the application by GWF should be denied.

## BACKGROUND FACTS

The background to this dispute is relatively straightforward and for the most part is undisputed. Bosse is the owner of the M/V BOSSE, having purchased the vessel in December 2001, before entering into a contract to charter the vessel to GWF for the carriage of a cargo of bananas owned by Chiquita International Ltd.[1] to Syria. The charter party provides that any and all disputes between Bosse and GWF are to be resolved by arbitration at London, England pursuant to English law. Due to irregularities in calling at third-world countries with corruption problems like Syria has, Bosse allowed its ship to be sent to Syria only on the condition that a provision was included in the charter party that required GWF to indemnify Bosse for certain "present and future" expenses that might be incurred there (Åström Declaration ¶3-7).

When the vessel called at Syria in May 2005, the ship was detained by local authorities in respect to a customs fine which had been imposed against the vessel *in rem* during a prior call in 2001, prior to Bosse's purchase of the vessel. Despite the presence in the charter party of Clause 77 which permitted GWF to trade the ship to Syria "on

---

[1] GWF and Chiquita are related entities – for all intents and purposes, GWF is Chiquita's shipping arm.

basis that charterers will provide an LOI [letter of indemnity] in respect of present or future customs fines", GWF failed to post the required LOI or pay the fine. Instead, Bosse paid the fine and secured the release of the vessel. This process took several days and Chiquita claimed that its cargo of fruit was damaged as a result. Bosse has asserted that the damages incurred at Syria, including but not limited to the customs fine, unpaid hire, and any damage to Chiquita's bananas that resulted from the delay are the responsibility of GWF under the charter, and Bosse has demanded arbitration of GWF at London as required under the charter.

Chiquita and GWF brought suit in this Court on July 24, 2007 in order, *inter alia*, to obtain security pursuant to Rule B from Bosse for Chiquita's claimed damages (as well as some other relatively minor damages claimed by GWF in its own right). The suit brought by Chiquita and GWF named entities other than Bosse as defendants, including the M/V BOSSE's manager, Holy House Shipping AB, and that suit is entitled *Chiquita International Ltd. v. MV BOSSE*, and bears docket reference 2007 CIV 6786 (PKL).[2] Chiquita and GWF restrained certain electronic funds transfers ("EFT's") in connection with their application under Rule B, including some in which neither Bosse nor Holy House have any interest, and an application to vacate the attachment of such funds has been separately filed. In addition, no prompt notice of the restraints as required by Local Admiralty Rule B.2 was ever received by Bosse, and Bosse was never served with the Summons and Complaint in the action initiated by Chiquita and GWF.[3]

---

[2] Holy House asserts that it is not a proper defendant in this action, as it was an agent for a disclosed principal, had no contract with either GWF or Chiquita, and owed no duty to either.
[3] Bosse and Holy House still have not been served with the Summons and Complaint in that action.

Bosse brought its own Rule B action before this Court in order to secure its own claims against GWF.  Bosse's claims against GWF also arise out of the detention at Syria, but are not compulsory counterclaims.  Bosse, in bringing the instant Rule B application, fully advised the Court of the action previously initiated by Chiquita and GWF and offered to mark the case as related.  The Clerk of the Court declined to permit the matter to be marked as related, however, and Bosse's action was assigned docket reference 07 CIV 7221 (RJS).  Judge Sullivan, however, was unavailable and so the application was presented to Chief Judge Wood, who was sitting as the Part I Judge at the time.  Chief Judge Wood granted the application made by Bosse with full knowledge of the similarly situated action brought by GWF and Chiquita.  Bosse subsequently restrained funds of GWF and provided GWF with the required Rule B.2 notice.  GWF applied to Judge Swain[4] to vacate the attachment and/or to consolidate the two cases before Your Honor.  Bosse immediately consented to such consolidation and this Court ordered it.[5]

There is nothing improper about Bosse's attachment of GWF's funds, and Bosse's action in seeking security for its own claims against GWF were in no way retaliatory and were not intended to disrupt GWF's operations.  Bosse has a legitimate maritime claim and is just as entitled to seek security for such claim as GWF and Chiquita were entitled to seek security for their claims (Unger Affirmation ¶10-12).

---

[4] Judge Sullivan was still not available and Judge Swain was by then sitting as Part I Judge.

[5] Regrettably, GWF's brief is choked with rhetoric accusing Bosse of any number of improprieties, even labeling Bosse's action as retaliatory.  The accusations are all misplaced.  Indeed, in any case where parties have claims against one another, the first to file would always be in a position to allege that the other's action is retaliatory.

## ARGUMENT

### Point I

### BOSSE'S BURDEN UNDER RULE E IS SATISFIED AND THE ATTACHMENT SHOULD BE MAINTAINED

It is well established that in order for a plaintiff to maintain an attachment pursuant to Rule B, the plaintiff must have asserted a maritime claim against the defendant whose assets are to be restrained that is *prima facie* valid. This requirement is made abundantly clear from Rules A and B and from the recent decisions of the Second Circuit in <u>Winter Storm Shipping Ltd. v. TPI</u>, 310 F.3d 263 (2d Cir. 2002) and <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434 (2d Cir. 2006). It is also plain from Rule E that the burden of demonstrating that the plaintiff has a valid *prima facie* maritime claim against the defendant capable of supporting a Rule B attachment is squarely on the plaintiff.[6]  Plaintiff Bosse herein easily clears this hurdle, claiming damages arising under a maritime contract of charter party with Defendant GWF.

---

[6] The level of proof required of a Rule B plaintiff to demonstrate that it has a valid *prima facie* maritime claim is not clear. In <u>Tide Line Inc. v. Eastrade Commodities, Inc.</u>, 06 CIV 1979 (S.D.N.Y. Aug. 15, 2006) (*unreported*), Chief Judge Wood expressed the position that the Court should not look further than the plaintiff's pleadings to determine if a maritime claim has been sufficiently pled, and Judge Karas of this District has very recently concurred with Chief Judge Wood's analysis on this point. *See* <u>SPL Shipping Ltd. v. Gujarat Cheminex Ltd.</u>, 2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. Mar. 15, 2007). Other jurists in this District, however, have required more, though, imposing on a maritime plaintiff the obligation to demonstrate that "reasonable grounds" exist for the attachment. In so doing, plaintiffs are required to introduce material beyond the pleadings. Still other decisions within this District have announced other standards to be applied. Regardless of the standard to be applied, though, Bosse has a valid *prima facie* maritime claim.

GWF's sole argument in favor of vacature is the allegation that Bosse's claims are frivolous. GWF's allegations in this regard are unsupported and unsupportable.[7] The dispute between the parties is extraordinarily narrow and relates to the meaning of a single phrase within Clause 77 of the charter party contract, which required GWF to indemnify Bosse in respect of "present and future" customs fines connected with a vessel call at Syria which might cause damage to Bosse.

GWF argues essentially that this phrase relates only to those expenses incurred with respect to the cargo booked on the vessel by GWF. Bosse, on the other hand, argues that the phrase's use of the word "present" means "at the time when the charter party contract was agreed" and that "future" means thereafter occurring. GWF objects to an interpretation that would render it liable for (as here) purported customs violations that predated GWF's use of the vessel, while Bosse objects to an interpretation that renders the use of the words "present and future" meaningless. If Bosse is correct in its interpretation of the contract, then GWF will be liable for Bosse's provable damages. If, on the other hand, GWF is correct in its interpretation of the contract, then Bosse will be liable for GWF's provable damages.

In support of its point of view that Bosse's claims are frivolous, GWF presents the opinion of its London solicitor, Mr. Hardingham, who not surprisingly opines that he does not believe that Bosse will succeed on its claims. Noticeably, though, even Mr. Hardingham does not opine that Bosse's claims are frivolous or that Bosse's claims cannot be supported under English law. Rather, Mr. Hardingham only sets forth that he

---

[7] GWF spends a great deal of time arguing the merits of its position to this Court even though GWF admits that the merits are not before this Court and are instead governed by English law and are to be decided by arbitration at London.

thinks Bosse will lose in the London arbitration. It is worth observing that with the exception of one case which is not relevant to the issues before this Court, Mr. Hardingham's opinion appears based only on what he believes English law to be. In contrast, and in opposition to this position, Bosse has submitted the Declaration of its London solicitor, Mr. Smith, which rebuts Mr. Hardingham's position with multiple references to learned treatises and decisional law, and who opines that the proper interpretation of the subject clause favors Bosse's position. Bosse also submits the Declaration of Mr. Åström, which addresses the remaining allegations raised by GWF.

Ultimately, the merits of this dispute are not before this Court to decide. Whether Bosse or GWF is correct is not relevant to this Court's decision on GWF's application. It is enough for this Court to observe that the matter is to be determined under English law before an arbitral tribunal at London as agreed, and that learned counsel for Bosse has submitted testimony under penalty of perjury that Bosse has a good arguable case under English law and that Bosse's claim (which is plainly maritime in nature) cannot therefore be deemed "frivolous". In this regard, not even GWF's London solicitor has submitted that Bosse's claims are frivolous. It is only GWF's New York counsel who has described Bosse's claims as frivolous, and – respectfully – counsel's unsupported say-so is simply no basis for such a finding.

At this juncture, the Court can only conclude that Bosse's claims are not frivolous and its attachment must therefore be maintained. Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761, *4 (S.D.N.Y. Oct. 25, 2005) (at this early stage in the proceedings, a court "should be reluctant to prejudge the merits of claims based essentially on the pleadings and a sparse record consisting of a few documents, in

advance of any discovery. This is particularly so when the ultimate merits will be decided not by this Court, but by an arbitration panel in another country"); *see also* Palette Marine, Ltd. v. Pacific Ocean Resources Ltd., S.D.N.Y. 06 CIV 13141 (RLC) (*unreported*) (Jones J.).

The claims asserted by Bosse clearly are maritime claims which are supported by the facts and are good arguable claims under English law as attested to by Bosse's solicitor. As such, it cannot be fairly said that the claims are frivolous and accordingly GWF's motion should be denied.

### Point II

### THE CONTINGENT INDEMNITY PORTION OF THE ATTACHMENT IS RIPE ENOUGH TO SUPPORT A RULE B ATTACHMENT

GWF argues that a portion of the attachment sought in this action by Bosse is to secure a contingent indemnity claim. Chiquita has brought suit against Bosse alleging that Bosse is liable for alleged damage to the cargo of bananas caused by the delay at Syria. Bosse claims that under the charter party, GWF is responsible for indemnifying it for any such damages owed by Bosse to Chiquita. In support of its suit against Bosse, Chiquita has sought to restrain (and has in fact restrained) property of Bosse as security pursuant to Rule B. Pursuant to the charter party contract between Bosse and GWF, English law applies, and under English law, this claim is not a contingent indemnity claim, but is instead ripe and ready for adjudication, regardless of whether Bosse has as yet paid any amount to Chiquita. Smith Declaration, ¶21-23. GWF's arguments in this

regard are accordingly based on an incorrect premise, are not meritorious, and the motion should be denied.[8]

Even if this portion of Bosse's claim was to be considered a contingent indemnity claim, however, it is still ripe enough, under long-standing decisions within this Circuit, to support a maritime attachment under Rule B. The touchstone case for any discussion as to when and whether a maritime plaintiff's claim is too premature to sustain an application for an attachment is Greenwich Marine, Inc. v. S.S. ALEXANDRA, 339 F.2d 901 (2d Cir. 1965). In Greenwich, the District Court was called upon to determine whether there was just cause for arresting and attaching the defendant vessel. The District Court in Greenwich found that the plaintiff's claim was premature and the Second Circuit agreed: "no judgment had been entered against Greenwich for the cargo damage, and no suit had been instituted against Greenwich for the cargo damage". Id. at 905. The Second Circuit therefore affirmed the decision of the District Court to vacate the restraint and dismiss the action as unripe.

Staronset Shipping Ltd. v. North Star Nav. Inc., 659 F. Supp. 189 (S.D.N.Y. 1987) represents a case in which the Court determined that a contingent indemnity claim was "ripe enough" to sustain an attachment. In Staronset, Judge Knapp held that where the party seeking indemnity had itself been sued (or arbitration brought against it), and where that party had been put to significant expense as a result – such as by being

---

[8] Indeed, at page 3 of GWF's brief, GWF argues that Chiquita would waive any claim against Bosse for which it is determined that GWF must indemnify Bosse. This is not only a judicial admission that Bosse *might* win in London (and hence Bosse's claims are not frivolous), but also assumes that the charter party dispute between Bosse and GWF is capable of being presently resolved, even prior to any resolution of the cargo claim brought by Chiquita in New York. Plainly, the charter party dispute could only be resolved first if Bosse's claim was ***not*** a contingent indemnity claim.

required to post security – then an otherwise premature contingent indemnity claim is "ripe enough" to support an application for a Rule B attachment. Id. at 190-91. Judge Knapp recognized the argument advanced by the defendant in Staronset that the indemnity cause of action would only arise, if ever, if the plaintiff incurred liability to the party that had brought a cause of action against it. The Staronset Court held, though, that: "we believe that the ship owner's concerns are reasonable and that he is entitled to the security which he seeks". Id. at 190. In that decision, the fact that the ship owner had already been sued by a third party was dispositive and matured the maritime claim into one that would support a request for security for the indemnity claim from the Staronset defendant.

Judge Buchwald held similarly in the recent case of Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. Oct. 3, 2005). There, the third party had commenced arbitration against plaintiff and plaintiff had, in turn, commenced arbitration against defendant. The only act undertaken by the third party against plaintiff in the head arbitration was the provision of documentary evidence in support of its claim. Judge Buchwald denied defendant's motion to vacate the attachment:

> [t]hus, this case is distinguishable from *Greenwich Marine*...relied on by [defendant], because in that case there was little indication that the damage claim would actually be passed through a chain of charter parties and asserted against the plaintiff. After reviewing the record, we find that it is not unduly speculative to assume that the physical damage claims are being asserted down the chain of charter parties and that plaintiff has a reasonable belief that it faces potential liability totaling $350,000 for those damages. We therefore find it appropriate to include this claim in the total amount that plaintiff is entitled to attach as security.

Daeshin, 2005 U.S. Dist. LEXIS 22409, *8.

The time to measure whether a claim is "ripe enough" to sustain an attachment is as of the time of the filing of the complaint. At the time that Bosse filed this action, it had already been sued by Chiquita, and Bosse's funds had already been restrained by Chiquita, serving as security for Chiquita's claims. Accordingly, at the time that Bosse filed this action, it no longer fit the Greenwich paradigm and was instead on all fours with the situation in Staronset and Daeshin. Bosse's action was therefore ripe enough to support an attachment, even for the portion of its claim against GWF which GWF argues (incorrectly, it is submitted) is a contingent indemnity.

Curiously, in order to argue that Bosse's claim is not ripe, GWF points to certain recent cargo damage cases decided with specific reference to the "Inter-Club Agreement", or ICA: GWF refers this Court, for example, to Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd., 2007 U.S. Dist. LEXIS 19531 (S.D.N.Y. 2007) and T&O Shipping Ltd. v. Lydia Mar Shipping Co., 415 F.Supp.2d 310 (S.D.N.Y. 2006). In both, the Court determined that in cases involving claims for damage or delay to cargo, *in which the ICA is a part of the underlying contract*, the ICA required that the cargo claimant be paid before a claim for indemnity matured to the point where it was "ripe enough" to support a request for an attachment under Rule B. GWF's reliance on these cases is entirely misplaced, because the ICA is not a part of the contract between Bosse and GWF. Indeed, even cases decided under the ICA hold that where the plaintiff has itself been sued and has provided security in favor of the third party (as is the case with Bosse in the instant matter), the attachment is permitted of what would otherwise be a contingent indemnity claim. *See, e.g.,* Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl

Rohren, Ltd., 485 F.Supp.2d 399 (S.D.N.Y. 2007) (Hellerstein, J.). The other cases cited by GWF, J.K. Int'l Pvt. Ltd. v. Agriko S.A.S., 2007 U.S. Dist. LEXIS 10074 (S.D.N.Y. Feb. 13, 2007) and Bottiglieri di Navigazione, S.p.A. v. Tradeline LLC, 472 F.Supp.2d 588 (S.D.N.Y. 2007), are not inconsistent. In J.K. Int'l, for example, the plaintiff was unable to demonstrate that the third party had any intention to press its claim against the plaintiff. Here, though, the third party (Chiquita) has pressed its claim against Plaintiff Bosse: Chiquita filed suit on the merits of its claim against Bosse in this Court prior to Bosse's application for an attachment.

GWF's premise that the portion of Bosse's attachment application which seeks security for the claim made by Chiquita is not ripe and is therefore a contingent indemnity claim not capable of supporting a Rule B attachment is incorrect on all fronts. This portion of Bosse's claim is presently ripe under English law (which governs the contract between Bosse and GWF). More to the point, though, even if this portion of Bosse's claim were to be considered a contingent indemnity claim, it is ripe enough under all prevailing law to support a maritime attachment under Rule B. Accordingly, GWF's motion should be denied.

### Point III

### THIS ACTION SHOULD NOT BE DISMISSED

GWF's application purports to seek dismissal of Bosse's action. No application was filed pursuant to Rule 12, however, and it is well-settled that a Rule E application to vacate an attachment cannot serve as a proxy for an application under Rule 12 to dismiss an action, lest Rule 12 be completely subsumed by Rule E. Maersk, Inc. v. Neewra, Inc., 443 F.Supp.2d 519 (S.D.N.Y. 2006) (denying application to vacate attachment and

dismiss case; holding particularly that the application to dismiss is properly raised in the context of a Rule 12 application, not under Rule E(4)(f)).

To the extent that GWF can be considered to be seeking a dismissal on the pleadings under Rule 12, the well-settled requirement that the Court must presume that all well-pleaded allegations in the complaint are true, must resolve all doubts and inferences in the plaintiff's favor, and must view the complaint in the light most favorable to the plaintiff. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 170-71 (2005); Albright v. Oliver, 510 U.S. 266, 267 (1994); Scheuer v. Rhodes, 416 U.S. 232 (1974). Under this standard, a complaint should only be dismissed if it appears beyond all doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41 (1957); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The court may not decide the winners or losers in the case or even examine the "believability" of the pleader's claims, or weigh the evidence. Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 327 (2d Cir. 2005). An action cannot be dismissed merely because the trial court doubts the pleader's allegations or suspects that the pleader will ultimately not prevail at trial. Ideal Steel Supply Corp. v. Anza, 373 F.3d 251, 264 (2d Cir. 2004).

Plainly, Bosse's Complaint sets forth a well-pleaded claim for recovery. Under this well-established standard, there is no basis for dismissal, and GWF has offered nothing that would support any other conclusion in its moving papers.

Point IV

## THE QUANTUM OF THE ATTACHMENT SHOULD NOT BE REDUCED

GWF argues in the alternative that if the attachment is to be maintained, it should be reduced in quantum – GWF claiming that the amount of security sought is "grossly exaggerated". Again, GWF is completely incorrect.

In arguing that Bosse's main claim (excluding, for the moment, the portion concerning interest and costs) for security is overblown, GWF only argues that Bosse won't succeed in London, again improperly arguing the merits of the dispute before this Court.[9]  GWF has failed to make the showing of good cause required by it under Sea Transport Contractors, Ltd. v. Indus. Chemiques du Senegal, 411 F.Supp.2d 386, 396 (S.D.N.Y. 2006) (citing Rule E(6)).  The amounts sought by Bosse for security are adequately supported and GWF does not make any attempt to argue what lower amount should result.  GWF's suggestion seems to be that the attachment for the main part of Bosse's claim should be reduced to zero on the basis of GWF's solicitor's position that Bosse will not succeed on the merits in London.  GWF is simply seeking vacature under the guise of a reduction to nothing, which of course is unsupportable.  In the absence of

---

[9] GWF argues, for example, that Bosse knew or should have known about the Customs fine in Syria.  To the extent that this Court is even interested in entertaining such argument, it should find that GWF's position is not meritorious in the slightest.  As set forth in the Åström and Smith Declarations, the customs fine was imposed prior to Bosse's ownership of the vessel, Bosse had no notice of the fine, and had purchased the vessel pursuant to a warranty from the prior owner that the ship was "free and clear of all liens and encumbrances".  Moreover, as set forth in the Smith Declaration, it is simply not practicable to check every single port in the world for possible liens before purchasing a ship, and even the tools readily available to potential purchasers of vessels would not have checked ports in Syria.  At the time of the purchase of this ship in December 2001, Bosse would not have anticipated a 2005 charter to GWF that would take the ship to Tartous, Syria.

any valid argument that shows that Bosse's claim is exaggerated, which it is not, this Court plainly should not order any reduction in the amount of security on the main claim.

Turning next to the argument by GWF that the interest and costs portion of the restraint is "grossly exaggerated", GWF is again incorrect. As set forth in the Smith Declaration, the amounts indicated for interest and costs are appropriate, even conservative. Smith Declaration, ¶24-26.

In order to maintain an attachment under Rule B for the quantum requested by the plaintiff, the plaintiff need only demonstrate a reasonable basis for the calculation of its claim. "It is well-settled that in an attachment proceeding, the plaintiff need not prove its damages with exactitude." Dongbu Express Co. v. Navios Corp., 944 F. Supp. 235, 237 (S.D.N.Y. 1996), *citing* Bergesen v. Lindholm, 760 F. Supp. 976, 986 (D.CT. 1991) (holding that all that was required of the plaintiff was "a fair and reasonable estimate of damages"). *See also* Rolls Royce Industrial Power (India) v. M/V FRATZIS M., 1996 A.M.C. 393, 402 (S.D.N.Y. 1995) (Haight, J.) (holding the plaintiff's duty in calculating its damages "goes no further" than "showing a reasonable relationship between the items or headings and the amounts sought to be protected", holding also that "the plaintiff need not prove its damages with exactitude or to the very penny"). All that is necessary is for the court to determine that the plaintiff's claims are not frivolous. Id.

On the other hand, for a defendant to cause the quantum of a Rule B attachment to be reduced, the level of proof required is heightened: the defendant has the greater burden of showing that the amount of security was excessive. *See* Benedict on Admiralty § 3.02[D][7] *citing* Whitney-Fidalgo Seafoods v. MISS TAMMY, 542 F. Supp. 1302, 1304-05 (W.D.WA. 1982) (holding that the defendant's burden in seeking a reduction of

an attachment is to supply proof that the quantum attached "is clearly excessive as compared to the claim figure", and finding that where there is a likelihood of recovery of costs, attorneys fees and interest, such amounts may not be discounted from the claim).

It is well established that the burden on a party seeking the reduction of security is considerably greater than where the amount of security is set by statute or is provided by rule. G. Gilmore & D. Black, <u>The Law of Admiralty</u> § 9-89, at 799-800 (2d ed. 1975); 7A Moore's Federal Practice P E.14, at E-706 (2d ed. 1979). Here, Defendant GWF's application to reduce the attachment should be denied for lack of proof. Plaintiff Bosse has established a reasonable and non-frivolous basis for its calculation of damages in its Verified Complaint and in the Smith Declaration. Nothing more is required of Bosse and GWF has not met its heightened burden to cause a reduction in the quantum to be secured. Accordingly, no reduction should be ordered.

**Point V**

**GWF'S REQUEST TO AMEND ITS COMPLAINT**
**SHOULD BE DENIED**

Slipped in at the tail end of GWF's motion to vacate or dismiss this attachment (GWF brief at 16-17) is a request by GWF to Amend the Chiquita/GWF Complaint and related pleadings. This application should be denied.

First, and most obviously, the application is made in the context of the wrong action. The application should be made, if at all, in the context of GWF's/Chiquita's case against Bosse and Holy House, not in the context of Bosse's case against GWF.

Next, turning to the specifics of the application itself – which essentially requests an uplift in the amount to be restrained against Bosse/Holy House to account for

15

attorneys fees Chiquita/GWF hope to recover, the request should be denied as to Chiquita because under the American Rule (and Chiquita has brought its action in the United States under U.S. law), attorneys fees are not recoverable, and so cannot be a part of Chiquita's claim for which an attachment is proper.[10] The request should be denied as to GWF because GWF has not commenced any arbitration of its own. Eitzen Sealift A/S v. Cementos Andinos Dominicanos, S.A. de C.V., 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. Sept. 9, 2005). In Eitzen, Judge Chin held that: (a) where an arbitration had not been commenced at the time the plaintiff filed its application for a Rule B attachment, and (b) where the plaintiff still had not commenced an arbitration by the time the attachment was challenged (or was challenged with respect to the prospective costs of such arbitration), it was inappropriate to permit an attachment for such prospective fees and costs.

Although it is well-settled that under Rule 15, amendments should be liberally permitted, it is equally well-settled that amendments should not be permitted if they are futile. See, e.g., Newland v. Dalton, 81 F.3d 904, 907 (9th Cir. 1996) ("[D]istrict courts need not accommodate futile amendments"). The proposed amendment by GWF is futile and should therefore be denied.

---

[10] Under Rule B, an attachment can be issued "up to the amount sued for". Rule B(1)(a).

## CONCLUSION

For all the foregoing reasons, GWF's motion to dismiss the action and/or to vacate or reduce the attachment should be denied.

Dated: New York, New York
      September 12, 2007

                              Respectfully submitted,
                              FREEHILL HOGAN & MAHAR, LLP
                              Attorneys for Plaintiff Bosse Shipping Ltd.

By:

Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)
80 Pine Street
New York, NY 10005
(212) 425-1900 / (212) 425-1901 fax