UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BOSSE SHIPPING LTD.,                                            :
                                                               :
                                    Plaintiff,                 :     07 CV 7221 (RJS)
                                                               :
                  - against -                                  :
                                                               :
GREAT WHITE FLEET, LTD.,                                        :
                                                               :
                                    Defendant.                 :
-----------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT AND VACATE ATTACHMENT

CASEY & BARNETT, LLC
317 Madison Avenue, 21st Floor
New York, NY 10017
(212) 286-0225 (phone)
(212) 286-0261 (fax)

*Attorney's for Defendant*
*Great White Fleet, Ltd.*

Gregory G. Barnett, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………..i

PRELIMINARY STATEMENT…………………………………………………1

STATEMENT OF FACTS……………………………………………………..4

POINT ONE:    STANDARD OF REVIEW……………………………..6

POINT TWO:    BOSSE'S CLAIMS AGAINST GWF ARE FRIVOLOUS
               AND MADE FOR THE IMPROPER PURPOSE OF
               RETALIATION…………………………………………9

POINT THREE:  ALTERNATIVELY, PURSUANT TO SUPPLEMENTAL
               ADMIRALTY RULE E(6) THE COURT SHOULD
               REDUCE THE AMOUNT OF THE ATTACHEMENT TO
               AN AMOUNT COMMENSURATE WITH PLAINTIFF'S
               PROVABLE DAMAGES, IF ANY……………………………..14

CONCLUSION…………………………………………………………………17

## TABLE OF AUTHORITIES

<u>CITATIONS</u>

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,*
460 F.3rd 434, 445 (2nd Cir. 2006)…………………………… …...…….....6, 7, 8, 11,12

*Bay Casino, LLC v. M/V ROYAL EMPRESS,*
1999 U.S. Dist. LEXIS 22357 (S.D.N.Y. 1999)………………….………….…..…13

*Blake Maritime, Inc. v. Petrom S.A.,*
No. 05 Civ. 8033, 2005 WL 2875335, at *2 (S.D.N.Y. Oct. 31, 2005)………………….8

*Bottiglieri Di Na Vigazione Spa v. Tradeline LLC,*
472 F.Supp.2d 588, 590 (S.D.N.Y.2007)………………….…………………….12

*Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.,*
2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. 2005)...............................................13, 14

*Dongbu Express Co. v. Navios Corp.,*
944 F. Supp.235 (S.D.N.Y. 1996)...................................................12, 13, 14

*Greenwich Marine, Inc. v. S.S. Alexandra,*
339 F.2d 901, 905 (2d Cir.1965)………………………………………..…….8, 14

Glidden Co. v. Hellenic Lines, Ltd., 315 F.2d 162 (2d Cir. 1963)…………………..16

*J.K. Int'l, Pty., Ltd. v. Agriko S.A.S,*
No. 06 Civ. 13259, 2007 WL 485435, *4-5 (S.D.N.Y. Feb. 13, 2007)…………....……..12

*Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal,*
411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006)…….…………………….....…….8, 13, 15

*Sonito Shipping Company Ltd. v. Sun United Maritime Ltd.,*
478 F.Supp.2d 532, 540 (S.D.N.Y.2007)……………………………………....9, 12

*T & O Shipping, Ltd. v. Lydia Mar Shipping Co.,*
415 F.Supp.2d 310 (S.D.N.Y.2006)……………………………………………13

*Ullises Shipping Corp. v. FAL Shipping Co.,*
*415 F.Supp.2d 318, 322-23 (S.D.N.Y.2006)*...........................................................6

*Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping, Limited,*
475 F.Supp.2d 275, 275 (S.D.N.Y.2006)………………………… ………….....6, 8, 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BOSSE SHIPPING LTD.,

                          Plaintiff,                  07 CV 7221 (RJS)

        - against -

GREAT WHITE FLEET, LTD.,

                          Defendant.
-----------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS COMPLAINT AND VACATE ATTACHMENT

### PRELIMINARY STATEMENT

Defendant, Great White Fleet Ltd. (hereinafter "GWF"), by undersigned counsel submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint and Vacate Attachment pursuant to Rules E(4)(f) and Rule E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

GWF's funds, in the amount of $1,485,934.85 were attached pursuant to an Ex-Parte Order Directing the Clerk to Issue Process of Maritime Attachment signed by the Honorable Judge Wood on August 14, 2007. (Barnett declaration Exhibit A: Complaint and Exhibit B: Order of Attachment). The claim was assigned to the Honorable Judge Richard J Sullivan; however due to his unavailability, The Honorable Judge Swain, as Part 1 Judge, sent the claim to this Court as it is related to a prior filed claim currently before this Court entitled *Chiquita International Limited and Great White Fleet Limited against MV BOSSE her engines, boilers, tackle, furniture, apparel, etc., in rem; Bosse*

*Shipping Ltd. and Holy House Shipping AB in personam* 2007 Civ. 6786. (Barnett declaration Exhibit C).

Both claims that are before the Court revolve around an arrest of the MV BOSSE in Syria in 2005 by a governmental agency based upon a fine incurred by the vessel back in 2001 that had not been paid by the vessel's former owners. GWF, the transportation arm of Chiquita, chartered the MV BOSSE in 2005 to carry bananas from Central America to, among other places, Syria. Due to the arrest of the MV BOSSE, the vessel sustained a delay in her schedule. As a result, Chiquita was damaged in the form of lost revenue for its fruit. In addition, GWF put the vessel off-hire while awaiting the plaintiff, Bosse Shipping Ltd. (hereinafter "Bosse Shipping" or "Bosse") to pay the fine to get the vessel out from under the arrest. Bosse Shipping argues in its Complaint that, pursuant to a clause in the charter party, GWF is obligated to indemnify Bosse Shipping for all of the consequences resulting from the vessel arrest. Importantly, while making this argument Bosse admits that the reason for the arrest had nothing to do with GWF, but was a result of a prior vessel call in Syria in 2001.

GWF submits that the attachment of their funds was improper and was done in retaliation for the filing of the earlier Chiquita action. Only after Chiquita filed its claim did Bosse Shipping demand arbitration in London pursuant to the charter party and initiate this action for security. However, instead of answering the Chiquita action and requesting counter security, Bosse sought an *ex-parte* proceeding to attach GWF's funds between the dates of August 16 to 20, 2007. At the time of the filing of its Complaint, Bosse Shipping was aware of the Chiquita action (and the undersigned's representation of Great White Fleet Ltd.) and even referred to it in its Verified Complaint. Still, Bosse

sought an *ex-parte* order from The Honorable Judge Wood without marking its Complaint as a related action to the earlier Chiquita action and proceeded to attach funds without notification to Chiquita until the end of the day on August 21, 2007. The obvious intent of proceeding with an *ex-parte* order of attachment in this manner was to not provide notice to GWF so as to cause as much disruption to GWF operations as possible. If GWF had notice, they could have represented themselves before Judge Wood prior to the attachment of the $1,485,934.85 and avoid the hardship that attaching these funds has caused.    Further evidence of Bosse Shipping's intent is evidenced by the gross exaggeration of its claim for damages.    First, Bosse Shipping requested security for damages for a fine that occurred 4 years prior and was wholly unrelated to the charter or GWF.    Bosse Shipping also requested security for a claim against GWF for taking the vessel off-hire during the arrest.    In doing so, it failed to mention that clause 41 of the charter party specifically provided that GWF could take the vessel off-hire during any period of time the vessel was under arrest. (See Barnett declaration Exhibit D: Charter Party).

Lastly, Bosse Shipping requested security for the claim made against it by Chiquita in the earlier filed action before this Court.    Essentially, they requested counter security for "potential liability".    Although they plead that pursuant to English law the claim is ripe, courts have held on similar cases that this contingent claim is not ripe for the attachment of funds.    Even if it was, as Bosse Shipping is fully aware, Chiquita would not file suit and assert a claim that GWF would be ultimately responsible.    Accordingly, Chiquita is prepared to waive any claim against Bosse Shipping that it is determined that GWF is liable in indemnity pursuant to the charter party.

Page 3 of 17

For the reasons explained herein, GWF asks the Court to dismiss the Complaint and vacate the Ex-Parte Order because Bosse's Complaint is improper and made for the improper purpose of retaliation as the claims Bosse alleges are so lacking in merit as to be characterized as frivolous. In the alternative, Bosse requests that the Court find that the claims are exaggerated and the Court reduce the amount of the attachment to Bosse's provable damages.

## STATEMENT OF FACTS

For the purpose of this Motion, GWF takes the following facts in the Complaint and charter party to be true.

Great White Fleet and Bosse Shipping entered into a charter party for the MV BOSSE in April 2005 for one voyage to carry Chiquita bananas from Central America to among other places, Syria. (Complaint ¶¶ 4, 5 ).


The pertinent clauses of the charter party are as follows:

Clause 17(a) of the charter party states in its entirety:

> 17.(a) Trade limits (Cl.1)
>
> Worldwide always within I.W.L. (see also clause 55), trading to exclude Iraq, Cuba, Turkish Occupied Cyprus, war and war-like zones and U.N. and USA embargoed countries.
>
> Trading to East Mediterranean is also excluded but trading to Egypt, Turkey, Lebanon, Greece and Syria is allowed.

Clause 41 of the charter party states in its entirety:

> 41.   Seizure, Detention, Arrest
>
> Should the vessel be seized or detained or arrested or delayed by any authority during the currency of this charter Party, the Charterers' liability

for seizure or detention or arrest or delay is ceased immediately from the time of her seizure or detention or arrest or delay and all time lost by this reason shall be treated as off-hire until the time of her release unless such seizure or detention or arrest or delay is occasioned by any personal act or omission or default of Charterers or their Agents.

The Owners shall indemnify consequences the Charterers may suffer or incur by reason of her seizure or detention or arrest or delay, even if such reason frustrates this Charter Party.

Clause 77 of the charter party states in its entirety:

77.    Syria

Charterers can trade Syria if required on basis that Charterers will provide an LOI in respect of present or future Customs fines in respect of this Charter.

In or about mid-April 2005 the vessel loaded a cargo of bananas in Limon, Costa Rica and was directed to Tartous, Syria. On arrival in Syria, on May 2, 2005, the vessel was arrested as a result of a customs fine in the amount of $420,000 which had been imposed against the vessel *in rem* as a result of a prior call of the vessel to Syria in April 2001. (Complaint ¶¶ 5, 6). Bosse Shipping paid the fine; however the vessel was not released from arrest until May 9, 2005, seven days later. (Complaint ¶¶ 6, 8).

Bosse Shipping obtained a payment of $300,000 from the former owners of the MV BOSSE for the customs fine the vessel incurred in 2001. As part of its claim that it sought and obtained attachment of GWF funds, Bosse Shipping demands that GWF pay $153,600, which represents the remaining principal balance of the customs fine and interest. (Complaint ¶10).

Bosse Shipping also sought and obtained attachment from GWF for deductions from the hire in the amount of $94,709.27, purportedly due to Bosse Shipping for alleged

off-hire and bunkers (fuel) used during the period the vessel was under arrest in Syria. (Complaint ¶11).

Bosse Shipping also sought and obtained attachment of a potential claim for indemnity. Specifically, Bosse Shipping obtained attachment of GWF funds for a cargo claim that Chiquita has alleged in the previously filed lawsuit before this Court. Although the claim has not been paid by Bosse Shipping, they have attached $750,295.36. (Complaint ¶12, 16).

Included with the above amounts demanded in the Complaint to be attached was also $107,329.88 in interest and $380,000 for estimated recoverable attorney fees, costs and costs of arbitration. (Complaint ¶21).

## POINT ONE

## <u>STANDARD OF REVIEW</u>

The standard generally applied in a Rule E(4)(f) analysis is that the plaintiff must demonstrate that "reasonable grounds" exist for the attachment. *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Limited*, 475 F.Supp.2d 275, 275 (S.D.N.Y.2006) citing *Ullises Shipping Corp. v. FAL Shipping Co.*, 415 F.Supp.2d 318, 322-23 (S.D.N.Y.2006). A plaintiff that has obtained an *ex parte* Rule B attachment order shoulders the burden at the post-attachment hearing to prove, *inter alia,* that "it has a valid *prima facie* admiralty claim against the defendant." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434, 445 (2nd Cir. 2006).

Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure provides in relevant part:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules…

Fed.R.Civ.P.Supp.Rule E(4)(f)

The Second Circuit Court of Appeals summarized maritime attachment under the Supplementary Rules in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434 (2ⁿᵈ Cir. 2006):

> We therefore hold that, in addition to having to meet the filing and service requirements of Rule B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his Burden of showing that he has satisfied the requirements of Rules B and E. We also believe vacatur is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.[FN5]
>
> FN5. Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and compiled with the requirements of Rules B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

*Id.* at 445.

Former Local Rule 12, to which the Second Circuit cited in note 5 of *Aqua Stoli,* provides as follows:

> Where property is arrested or attached, any person claiming an interest in the property arrested or attached may, upon showing of any improper

practice or a manifest want of equity on the party of the plaintiff, be entitled to an order requiring the plaintiff to show cause why the arrest or attachment should not be vacated or other relief granted, consistent with these rules or the supplemental rules.

*Aqua Stoli* at 440.

Additionally, Supplemental Admiralty Rule E(6) provides that "Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given...." As set forth above, the court "has power, pursuant to Supplemental Admiralty Rule E(6) to reduce the amount of the attachment when good cause is shown." *Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal*, 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006).

*Sea Transp. Contractors* goes on to hold:

> Finally, a district court has the inherent authority to vacate an attachment " upon a showing of ' any improper practice' or a ' manifest want of equity on the part of plaintiff.' " *Blake Maritime, Inc. v. Petrom S.A.,* No. 05 Civ. 8033, 2005 WL 2875335, at *2 (S.D.N.Y. Oct. 31, 2005) (quoting Southern District of New York Former Local Civil Rule 12 (1986)). The Second Circuit has held that " [t]he inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge." *Greenwich Marine, Inc. v. S.S. Alexandra,* 339 F.2d 901, 905 (2d Cir.1965).

A court can consider any allegations or evidence offered in the parties papers or at the post attachment hearing in determining whether reasonable grounds exist for the attachment. In E(4)(f) hearings plaintiffs should not be required to prove their case but to establish to the Court that it is likely that the alleged facts are true. *Wajilam Exports* 279-280.

## POINT TWO

### BOSSE'S CLAIMS AGAINST GWF ARE FRIVOLOUS AND MADE FOR THE IMPROPER PURPOSE OF RETALIATION

Chiquita and GWF filed an action with this Court for damages resulting from the April 2005 charter on July 27, 2007.  On August 9, 2007 notice was provided to Holy House and Bosse Shipping that $9,989.00 was attached as security for Chiquita's claim.  On August 14, 2007 Bosse Shipping demanded arbitration from GWF and on August 14, 2007 Bosse Shipping filed the above mentioned action seeking security for their alleged claim in arbitration.

The timing of Bosse's filing certainly suggests that it demanded arbitration and sought security as a result of Chiquita and GWF filing its claim a few weeks earlier. Although Bosse's Complaint originates from the same set of facts with the Chiquita action, Bosse did not Answer the Chiquita action and request counter security nor even mark its action as a related matter.  Instead, it sought an *ex-parte* proceeding knowing that GWF was represented by counsel in an action based on the same set of facts of its Complaint.  GWF submits that this was improper and evidences the retaliatory intent of Bosse with respect to its request for attachment.

### Bosse's Claims

In reviewing whether a claim passes the "valid prima facie admiralty claim" test of *Aqua Stoli*, one must look to the substantive law of the contract.  *Sonito Shipping Company Ltd. v. Sun United Maritime Ltd.*, 478 F.Supp.2d 532, 536-537(S.D.N.Y.2007). In the within matter, the charter party calls for English Law to apply.

Bosse asserted three claims in its Complaint pursuant to the charter plus requested additional security for fees and costs of arbitration. The claims Bosse alleges are for (1) GWF improperly making deductions for off-hire during the period of the arrest; (2) GWF's obligation to pay a customs fine against the vessel dating back to 2001; and (3) GWF is liable in indemnity for any potential liability that may exist for Bosse with respect to the cargo claim by Chiquita.

Bosse Shipping makes a summary, unsupportable allegation that through clauses 9 and/or 77 of the charter party "GWF is required to indemnify BOSSE against all consequences of its orders directing the vessel to call Syria…" (Complaint ¶14). Other than having the word "indemnity" in clause 9, the clause has nothing to do with the factual assertions made by Bosse. Clause 77 states that GWF is to issue a letter of indemnity for present or future Syrian Custom fines with respect to this charter. Clause 77 makes no mention of indemnity for the arrest of the vessel or that GWF would be unable to take the vessel off-hire during an arrest or that GWF would need to indemnify Bosse for cargo claims due to the arrest of the vessel. Moreover, clause 77 only speaks of present or future Custom fines with respect to this charter. There is a reason the words present and future are in the clause and past is not. The clear and unambiguous language in the contract is that GWF was not going to indemnify Bosse for past Customs fines. To suggest that this wording binds GWF to pay a customs fine placed on the vessel 4 years prior to the current charter party with GWF tortures the English language.

Bosse Shipping Claims are as follows:

1) GWF improperly made deductions for off-hire during the period of the arrest

Case 1:07-cv-07221-PKL    Document 12    Filed 09/12/2007    Page 14 of 20

The Complaint states that GWf improperly took deductions from the hire due to Bosse for alleged off-hire and bunkers (fuel) used during the period the vessel was delayed (under arrest) at Tartous. (Complaint ¶11). As put forward by Mr. Hardingham in his Statement, "all time lost by reason of the vessel being arrested by the Syrian Government during the currency of the charterparty is to be treated as off-hire in accordance with clause 41." (Hardingham Affidavit ¶12) Clause 41 of the charter party specifically gives GWF the right to take the vessel off-hire during an arrest. Bosse admits that the vessel was arrested when it arrived in Syria and not released until a week later. The deductions were made properly by GWF pursuant to clause 41 of the charter. Accordingly, this claim has no basis in law or fact. (Hardingham Affidavit ¶18). Bosse has no claim for deductions made by GWF as a result of the arrest. Any alleged claim is manufactured for the improper purpose of retaliation. Accordingly, the Court should vacate the attachment made pursuant to this claim in the amount of $94,709.27.

2) GWF is obligated to pay a fine against the vessel dating back to 2001

Adrian Hardingham reviewed the charter party and opined that he sees no basis on which Bosse Shipping Ltd's claim against Great White Fleet Ltd for US$153,600 (representing the amount of the Customs fine not recovered by Bosse Shipping Ltd from the vessel's former owners) can succeed. (Hardingham Affidavit ¶8). GWF had no responsibility for the fine imposed on the vessel in 2001. When Bosse purchased the vessel it had an indemnity provision in the sale documents and were able to obtain $300,000 from the prior owners. Bosse chartered the vessel to GWF knowing it was going to call Syria. Instead of doing the proper investigation to determine whether the vessel was going to be arrested when it called Syria, Bosse did nothing. Now they assert

a claim against GWF for the amount of the fine that was not reimbursed by the former owners in retaliation. There is simply no basis for this claim in fact or law and the attachment in the amount of $153,600 should be vacated. (See Hardingham Affidavit ¶18)

> 3) GWF is liable in indemnity for potential liability that may exist for Bosse with respect to the cargo claim by Chiquita.

As put forward by Mr. Hardingham in his statement, there is a lack of logic and Great White Fleet has no obligation to provide Bosse Shipping Ltd with an indemnity for the Chiquita claim. (Hardingham Affidavit ¶20, 21,23).

In general, courts in this circuit have not been receptive to contingent indemnity claims as a basis for maritime arrests for attachments. *Sonito Shipping Company Ltd. v. Sun United Maritime Ltd.*, 478 F.Supp.2d 532, 540 (S.D.N.Y.2007). Judge Haight in *Sonito* discusses the issue of ripeness of an indemnity claim as it relates to *Aqua Stoli's* requirement for a valid *prima facie* admiralty claim and opined that there are many judges in this circuit that have recently vacated maritime attachments based upon claims for contingent liability. *Id.* at 540-541 citing *J.K. Int'l, Pty., Ltd. v. Agriko S.A.S,* No. 06 Civ. 13259, 2007 WL 485435, *4-5 (S.D.N.Y. Feb. 13, 2007) (Karas, *J.*) (" Plaintiff's claims against defendant are therefore for indemnity only, and Plaintiff must show that its indemnity claim is ripe" ; in absence of evidence that shipowner intended to press a demurrage claim against charterer, charterer's claim for contingent indemnity against cargo receivers " is simply too thin a reed to rest on when Plaintiff carries the burden of defending the Attachment" ) (citing American cases); *Bottiglieri Di Na Vigazione Spa v. Tradeline LLC,* 472 F.Supp.2d 588, 590 (S.D.N.Y.2007) (Kaplan, *J.*) (where back-to-

back charter parties required that contract disputes be arbitrated in London under English law, shipowner had settled cargo receivers' claim for damages, and shipowner had announced its intention to seek to recover that payment from the head charterer in arbitration, head charterer's claim for contingent indemnity against sub-charterer could not sustain a maritime attachment of the sub-charterer's property; " [t]his claim for indemnity is not ripe under English law. Plaintiff thus has not established the ' valid prima facie admiralty claim' required under *Aqua Stoli*." ); *T & O Shipping, Ltd. v. Lydia Mar Shipping Co.*, 415 F.Supp.2d 310 (S.D.N.Y.2006).

The indemnity claim is not ripe and must be vacated pursuant to the law in this district.

The claims asserted by Bosse in its Complaint are not supported by fact or law. (Hardingham Affidavit ¶24). In *Bay Casino, LLC v. M/V ROYAL EMPRESS*, 1999 U.S. Dist. LEXIS 22357 (S.D.N.Y. 1999) in the context of a defendant's challenge to a maritime attachment, and where the plaintiff provided "misleading information regarding projected profits and actual costs" the court held that "plaintiff's lost profits claim is frivolous and, therefore, improperly included as part of the security." *Id.* at *3-4. "It is well-settled that in attachment proceeding, the plaintiff need not prove its damages with exactitude but the court must be satisfied that the plaintiff's claims are not frivolous," *Id.* at *3 citing *Dongbu Express Co. v. Navios Corp.*, 944 F. Supp.235 (S.D.N.Y. 1996).

Based on a review of the facts as alleged in the Complaint, the applicable charter party, the law in this circuit and Adrian Hardingham's analysis pursuant to English law, Bosse's claims are frivolous and must fail the *Aqua Stoli* requirement of having a valid

maritime claim for a maritime attachment. Accordingly, the Complaint must be dismissed and the attachment vacated.


## POINT THREE

### ALTERNATIVELY, PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE E(6) THE COURT SHOULD REDUCE THE AMOUNT OF THE ATTACHMENT TO AN AMOUNT COMMENSURATE WITH PLAINTIFF'S PROVABLE DAMAGES, IF ANY

Alternatively, GWF moves pursuant to Rule E(6) for a reduction of security, *i.e.*, the release of the majority of the $1,485,934.85 currently under attachment. GWF so moves on the basis that BOSSE's damages are either non-existent or grossly exaggerated. Supplemental Admiralty Rule E(6) provides that " Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given…." As set forth *supra*, the Court 'has power, pursuant to Supplemental Admiralty Rule E(6) to reduce the amount of the attachment when good cause is shown." *Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal*, 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006).

In *Dongbu Express Co., Ltd. v. Navios Corp.*, 944 F.Supp. 235 (S.D.N.Y. 1996), the vessel charterer sued the vessel owner and sought a maritime attachment in the Southern District of New York in support of a London arbitration. At the same time, the charterer also brought an attachment action in South Korea. The charterer attached funds in South Korea and in New York. Consequently, the owner moved this district court for a partial release of the funds attached in New York on the basis that the New York attachment was duplicative of the Korean attachment, and that the charter had become oversecured. Judge Scheindlin agreed that the charterer was oversecured and, therefore,

ordered a partial release of the New York attachment pursuant to Rule E(6) because the amount restrained in New York exceeded the difference between charter's provable damages and the amount of the Korean attachment. In so doing, Judge Scheindlin held that "in an attachment proceeding, the plaintiff need not prove its damages with exactitude" and held further that "[b]ut *the court must be satisfied that plaintiff's claims are not frivolous*." *Id*. at 237 (citations omitted)(emphasis added).

Similarly, in *Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.*, 2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. 2005) a corporation's motion for reduction in the amount of security under Rule E(4)(f) and E(6) was granted where the plaintiff failed to produce evidence to the court to justify the amount of the attachment. In *Daeshin Shipping*, Judge Buchwald applied the *Dongbu Express* standard in the case of a Rule E(6) challenge to a maritime attachment on the basis that the attachment was grossly exaggerated. That is, Judge Buchwald reviewed all of the evidence in the record concerning the plaintiff's claimed damages prior to reducing the amount of the attachment. "As plaintiff has succeeded in attaching the amount of $1,894,778, but only produced sufficient evidence to justify attaching $1,851,016.36, any funds in excess of this amount must be released." *Id*. at *6.

Finally, in *Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal*, 411 F. Supp. 2d 386 (S.D.N.Y. 2006), Judge Casey reduced the amount of a maritime attachment to a level that he viewed as reasonable under the circumstances and held as follows:

> A district court has the inherent authority to vacate an attachment "upon a showing of 'any improper practice' or a 'manifest want of equity on the part of the plaintiff.'" Blake Mar., Inc. v. Petrom S.A., 2005 U.S. Dist. LEXIS 26310, No. 05 Civ. 8033, 2005 WL 2875335, at 2 (S.D.N.Y. Oct.

31, 2005)(quoting Southern District of New York Local Rule 12 (1986)). The Second Circuit has held that the "inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge." Greenwich Marine, Inc. v. S.S. Alexandria, 339 F. 2d 901, 905 (2d. Cir. 1965).

*Sea Transport Contractors, Ltd.*, 411 F. Supp. 2d at 391.   Judge Casey found that "good cause" existed per Rule E(6) to reduce the amount of the attachment where the complaint did not accurately allege the amount of damages as evidenced by the parties' underlying contract.

The Second Circuit has held that a party injured in a breach of a charter party cannot recover damages which arise by reason of his own inactivity or imprudence, and are not the necessary and natural consequences of the default of the other party.  *Glidden Co. v. Hellenic Lines, Ltd.*, 315 F.2d 162 (2d Cir. 1963).  The claims that Bosse alleges are all a direct result of their vessel getting arrested in Syria.  They where fully aware that their vessel was going to call a Syrian port but did no investigation as to whether the vessel was going to be arrested upon arrival. There is simply no basis for them to assert claims against GWF through the charter party.

Lastly, Adrian Hardingham reviewed the estimates of fees and costs of the arbitration proceeding and believes that $200,000 (not the $380,000 estimated by Bosse) would be a more realistic estimate for the recoverable fees and costs for the arbitration. Additionally, Mr. Hardingham also notes that an interest rate between 5 and 6% could be expected from the arbitrators, not 8%. (Hardingham Affidavit ¶25, 26)..

With respect to the fees, costs and interest the Court deems appropriate, GWF requests that the Court allow it to Amend its Complaint, Order Directing Clerk to Issue

Process and Process of Maritime Attachment it filed in conjunction with Chiquita to include the additional security the Court deems fit.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint and vacate the attachment and direct the garnishees to release all restrained funds. In the alternative, this Court should reduce the amount of the attachment to a reasonable amount to secure only the provable damages.

Dated: September 5, 2007
      New York, NY

Defendant, Great White Fleet, Ltd.

BY: _____
Gregory G. Barnett
CASEY & BARNETT, LLC
317 Madison Avenue, 21st Floor
New York, NY 10017
(212) 286-0225 (phone)
(212) 286-0261 (fax)
ggb@caseybarnett.com