UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CIV 7221

BOSSE SHIPPING LTD

Plaintiff

-against-

GREAT WHITE FLEET LTD

Defendant

## SECOND AFFIDAVIT OF
## ADRIAN CHARLES HARDINGHAM

I, ADRIAN CHARLES HARDINGHAM of 22 – 23 Great Tower Street, London EC3R 5HE, state on oath:

1. I am the same Adrian Hardingham who swore an affidavit in this matter on 5 September 2007.

2. I have been requested on behalf of Great White Fleet Ltd ("GWF") to comment on the declaration of Michael John Smith dated 12 September 2007.

3. The contents of this Affidavit are true to the best of my knowledge, information and belief. The sources of my information and the grounds for my belief are communications, information and documentation provided on behalf of Great White Fleet Ltd.

1

4. It is well established under English law that, where a contract has been reduced to writing and where, as here, the wording of the contract is clear and unambiguous, there is no scope for a Court (or arbitrators) to receive extraneous evidence as to the supposed intention of one or other party in entering into the contract. Authority for this is hardly required, but the decision of the House of Lords in Prenn -v- Simmonds [1971] 3 All ER 236, made the position clear. A copy is attached as part of Exhibit ACH 2 to this Affidavit and I refer particularly to the Judgment of Lord Wilberforce at p. 240 (f) – (h).

5. In such circumstances, it can reasonably be said that Bosse Shipping Ltd's case is frivolous. There is no proper basis in law or fact on which the claims of Bosse Shipping Ltd can succeed in the English arbitration.

6. In this affidavit, I comment in turn on Mr Smith's declaration insofar as it relates to:

    (i)   Customs Fine;
    (ii)  Deductions from hire; and
    (iii) Chiquita's claim

7. Clause 77 is not a standard form clause in a time charterparty. My researches indicate that there appears to be no reported English law authority on a clause having the same or similar content to clause 77.

8. Accordingly, English arbitrators would simply construe the words of the clause to give effect to their clear and plain meaning.

Customs Fine

9. In my opinion, Mr Smith's construction of the words in clause 77 is plainly wrong.

10. Furthermore, Mr Smith's analysis of Clause 77 has two significant defects: (1) the meaning he gives to the word "present" means that it has to be understood as meaning "past", thereby distorting the language of the clause, and (2) he fails to give any meaning whatsoever to the highly significant words "in respect of this charter" at the end of the clause. I deal with each point in turn.

11. The only sensible construction that can be given to the words "*present or future customs fines in respect of this charter*" is that GWF was agreeing to provide a letter of indemnity for fines which (1) were raised in respect of the employment of the vessel by GWF in Syria at the time that the vessel was in fact employed in Syria ("present" fines), or (2) though raised in respect of the employment of the vessel by GWF were only raised at a time subsequent to the vessel ceasing to be on charter to GWF ("future" fines). In other words, GWF agreed that it would pay any fines which were caused by its employment of the vessel in Syria irrespective of whether the fines were raised during the currency of the charter or thereafter.

12. Mr Smith's construction that "present" means "*customs fines presently outstanding when the Charterparty was entered into*" distorts the meaning of "present". The category of fines that he talks of cannot properly be said to be "present" fines but rather should be described as "past" fines, the fine in question having been raised in 2001.

13. Most significantly, Mr Smith fails to give any consideration to the words "*in respect of this charter*". It is impossible as a matter of language reasonably to

assert that a fine which was raised in respect of the previous employment of the vessel in 2001 was a fine *"in respect of the charter"* between GWF and Bosse Shipping Limited.

14. Mr Smith's observation that *"one would expect that the indemnity given for the permission to direct the vessel to Syria would cover all fines and not just those arising on that particular call"* is his expectation of what the indemnity should extend to. This should be ignored because it unreasonably broadens the scope of the clause.

15. The construction which I have set out above also corresponds with obvious common commercial sense. The risk for unpaid and outstanding fines for the previous employment of the vessel should clearly fall on Owners absent any clear and compelling words to the contrary. There is none, and this is the crux of the matter.

Deductions from Hire

16. At paragraph 7, Mr Smith appears to contend that Bosse Shipping Limited is entitled to recover the deductions from hire by virtue of Clause 77.

17. Such a contention is unsupportable on the plain wording of Clause 77.

18. The assertion at paragraph 7 that *"all loss or damage flowing from the arrest of the vessel at Tartous was a contingency in respect of which GWF, by virtue of clause 77, had expressly agreed to indemnify Bosse"* is wholly unarguable on the clear wording of the clause. If the clause extended to *"all loss or damage flowing from the arrest of the vessel"*, as is contended, one would have expected clause 77 to have read along the following lines, *"Charterers can trade Syria if required on basis that Charterers will provide an LOI in respect of..........and any other losses or damage suffered by Owners as a result of such fines howsoever arising"*. . It

4

does not so read. The express indemnity is extremely limited in scope. GWF only agreed to provide a LOI for present or future customs fines in respect of the Charter. As such (and self-evidently), the only matter in respect of which GWF agreed to indemnify Bosse Shipping Limited was present or future customs fines and this is the critical issue.

19. Furthermore, Clause 41 makes it abundantly clear that not only did the vessel go off-hire on its detention but also that GWF's liability for the detention of the vessel ceased immediately from that time. The suggestion that clause 77 of the charterparty entitled Bosse Shipping Ltd to recover deductions from hire is, therefore, not only unarguable on a true construction of clause 77 but is also inconsistent with the express terms of clause 41.

20. The assertion in paragraph 8 that, had GWF complied with its obligation under clause 77 of the charterparty to provide an LOI, then the sum which it deducted from hire would have been payable to Bosse by way of indemnity is also wholly unarguable for the same reason. Clause 77 did not require GWF to indemnify Bosse Shipping Limited in respect of anything other than present or future customs fines.

21. At paragraph 9, Mr Smith asserts that off hire deductions can be recovered by Owners pursuant to an indemnity or as damages for a breach of charter.

22. It is correct that, as a matter of English law, off hire deductions can in certain circumstances be recovered by Owners as damages for a breach of charter. However, that would only be so if Owners could prove that a the vessel went off-hire as a result of some breach of contract by the charterers, as made clear by paragraph 25.88 of Wilford attached at p. 3 to exhibit MJS1.

23. Mr Smith fails to identify in paragraph 9 of the declaration or the paragraphs that follow what breach of charter he says resulted in the vessel going off-hire. As

5

such, he fails to identify the basis for this additional alleged entitlement to recover the off-hire deductions.

24. The only reference in the declaration to a breach of charter is GWF's failure to provide a LOI in respect of present or future fines as required by Clause 77. However, the vessel was detained because of a fine which had been previously raised and unpaid and which gave rise to an arrest order being made in respect of the vessel. In other words, no breach of charter by GWF led to the vessel being detained. As such, it is not arguable that any breach of charter caused the vessel to be put off-hire.

Chiquita's Claim

25. At paragraphs 12 - 14, Mr Smith seeks to clarify the legal basis on which it is said that Bosse Shipping Ltd is entitled to claim an indemnity from GWF in respect of Bosse's potential liability to Chiquita. At paragraph 13, Mr Smith says as follows, *"Bosse's claim is that under clause 77 GWF was obliged to provide an LOI to Bosse which would indemnify Bosse in respect of customs fines. The scope of the indemnity would have included all claims made by reason of the imposition of the fines and this would clearly include the present claim made by Chiquita as Chiquita is contending that its losses flowed directly from the delay to the vessel which delay was the result of the customs fine……GWF are contractually obliged to indemnify Bosse in respect of that potential liability"*.

26. On its clear and unambiguous wording, the indemnity under clause 77 extends only to (and no further than) fines in respect of the charter period. It cannot reasonably be argued that the scope of the indemnity *"would have included all claims made by reason of the imposition of the fines"*. Clause 77 simply does not say this.

6

27. Bosse Shipping Ltd also relies on clause 9 of the charterparty in support of its contention that it is entitled to an indemnity in respect of its liability to Chiquita.

28. As a matter of English law, Clause 9 must be construed in accordance with Clause 41 and Clause 77 of the charterparty. In particular, a Charterer is not liable under an express indemnity clause such as Clause 9 for the consequences of the Master complying with its orders where the loss "*may have arisen from a risk which the shipowner has agreed to run*", per Lord Justice Evans in the *Island Archon* [1994] 2 Lloyd's Rep 227 at p. 236, in which the Judge also held, "*What risks the shipowner has agreed to bear must depend upon the true construction of the charter-party and therefore upon the situation when the charter-party was entered into*". I attach a copy of this decision as pages 1 - 13 of Exhibit ACH 2 to this Affidavit.

29. Clause 77 only requires GWF to indemnify Bosse Shipping Ltd in the event that the vessel trades in Syria in respect of present or future customs fines (and not in respect of other consequences of trading in Syria or any other losses). Clause 41 provides that if the vessel is seized or detained or arrested or delayed by any authority during the currency of the charter party, the Charterers' liability for seizure or detention or arrest or delay ceases immediately from the time of her seizure or detention or arrest or delay unless this is occasioned by any personal act or omission or default of Charterers or their agents. Mr Smith does not take issue with my opinion at paragraph 11 of my 1st affidavit that there was no "personal act or omission or default" of GWF or their agents.

30. Accordingly, when considering the charterparty as a whole (as is necessary), clause 9 cannot be construed as requiring GWF to indemnify Bosse Shipping Ltd in respect of losses said to have arisen from the detention of the vessel as a result of the non-payment of fines. This would be contrary to clause 41 which absolves GWF from any liability for detention of the vessel absent any personal act or omission or default and to clause 77 which sets out a limited obligation of

7

indemnity not extending to a cargo claim, such as that brought by Chiquita. In other words, the risk of the vessel being detained due to prior fines falls on the shipowner on a true construction of the entire charterparty.

31. In any event, the liability to Chiquita arises not from the order of GWF to employ the vessel to Syria but rather out of the pre-existing unpaid fine imposed as a result of the prior call of the vessel to Syria in 2001 (and Bosse Shipping Ltd's failure to take all proper steps to ensure that the vessel was free from encumbrances). As indicated by Aikens J in the recent decision in the *Kitsa* [2005] 1 Lloyd's Law Rep 432 at p. 440, paragraph 28, the loss must be *"directly caused by the order as to employment of the vessel"*. (A copy of this decision is attached as pages 14 – 24 of ACH 2). In the present case, the loss was not directly caused by the order as to employment of the vessel. As such there is no causation between the order and the loss, a point which I have made in paragraph 23 of my first affidavit.

32. Paragraphs 18 – 20 of Mr Smith's declaration are unclear and seemingly irrelevant to the instant case. The verified complaint does not assert that GWF have presented Bills of Lading for signature to the Master and that liabilities have arisen from presentation of such Bills or that the Bills of Lading are inconsistent with the charterparty or give rise to a greater liability than under the charterparty.

33. For the reasons set out above, I consider that the contentions put forward by Mr Smith in his declaration are not reasonably arguable as a matter of English law.

SWORN this 17th day of September 2007
at 51 Eastcheap in the City of London

Before me,
A Solicitor empowered to administer Oaths

Clyde&Co
51 Eastcheap
London      8
EC3M 1JP